KEVIN A. DARBY, ESQ. (#7670)
TRICIA M. DARBY, ESQ. (#7956)
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada  89519
Tel.    775.322.1237
Fax     775.996.7290
kevin@darbylawpractice.com

Attorneys for Debtor

*E-filed: February 25, 2011*

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

In re:                                              CASE NO.     BK-N-10-54044-gwz

MICHAEL P. DECKER,                    Chapter 11

                        Debtor.

_____/

# DISCLOSURE STATEMENT
# FOR CHAPTER 11 PLAN OF REORGANIZATION

# OF

# MICHAEL P. DECKER

## TABLE OF CONTENTS

1.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    1.1    Purpose of the Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

    1.2    Deadlines for Voting and Objection; Date of Plan Confirmation Hearing. . . . . . . . . . 5

    1.3    Disclaimer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    1.4    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

2.    INFORMATION REGARDING THE CHAPTER 11 DEBTOR . . . . . . . . . . . . . . . . . .10

    2.1    Descriptions and History of the Debtor Business . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    2.1    Events Leading to the Filing of This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

3.    DEVELOPMENTS DURING THE COURSE OF THIS CHAPTER 11 CASE . . . . . . .10

    3.1    Meeting of Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    3.2    Schedules and Statement of Affairs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    3.3    Monthly Operating Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    3.4    Employment of General Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    3.5    Creditors Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4.    DESCRIPTION OF ASSETS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    4.1    Description of Real Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

    4.2    Description of Personal Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

5.    DESCRIPTION OF DEBTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    5.1    Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    5.2    Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

    5.3    Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    5.4    Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    5.5    Claims Deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES. . . . . . . . . . . . . . . . . . . 14

7.    DESCRIPTION OF PENDING AND COMPLETED LITIGATION . . . . . . . . . . . . . 14

8.    SUMMARY OF PLAN OF REORGANIZATION . . . . . . . . . . . . . . . . . . . . . . . . 14

    8.1    Classification and Treatment of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.2     Treatment of Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

8.3     Means of Implementing and Funding the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

9.     **POST-CONFIRMATION MANAGEMENT OF THE DEBTOR** . . . . . . . . . . . . . . . . . . 23

10.    **ALTERNATIVES TO THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

11.    **CERTAIN RISKS TO BE CONSIDERED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

11.1    Risk of Non-Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

11.2    Non-Consensual Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

11.3    Tax Consequences of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

11.4    Estimated Amounts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

11.5    Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

12.    **CONFIRMATION OF THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

12.1    Confirmation Requirements and Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . .26

12.2    Votes Necessary to Confirm the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

12.3    Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

12.4    Feasibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

12.5    Objections to Confirmation of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

13.    **DISCHARGE OF DEBTOR** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

# 1.    INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of MICHAEL P. DECKER (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Chapter 11 Plan of Reorganization (the "Plan") filed on February 25, 2011.  A full copy of the Plan is attached to this Disclosure Statement as Exhibit 1.  ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.***

The proposed distributions under the Plan are discussed at pages 16-25 of this Disclosure Statement.  General nsecured creditors holding allowed claims will receive distributions, which will total at least five cents on the dollar ($0.05).  Debtors estimate this will require total combined payments to unsecured creditors of $94,977.00.  Debtors estimate that in a chapter 7 liquidation bankruptcy case, creditors would receive a total combined distribution of $0.00 or approximately zero cents on the dollar ($0.00).  Thus, this Plan provides unsecured creditors substantially more than they would receive in a liquidation case.

## 1.1    Purpose of the Disclosure Statement

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

- Why Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**1.2     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.     *Time and Place of the Hearing to Finally Approve This Disclosure Statement and Confirm the Plan*

The hearing at which the Court will determine whether to finally approve this Disclosure Statement will take place at the C. Clifton Young Federal Building, 300 Booth Street, Reno, Nevada 89509, on the date and at the time set forth in the Notice Of Hearing, served herewith.

2.     *Deadline For Objecting to the Adequacy of Disclosure Statement*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon Debtor's Counsel by the date set forth in the Notice Of Hearing confirmation of the Plan, served herewith.

3.     *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact Kevin A. Darby, Esq., 4777 Caughlin Parkway, Reno, NV 89519.

**1.3     Disclaimer**

*The Court has conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. The Court's approval of this Disclosure Statement is subject to final approval at the hearing on confirmation of the Plan. Objections to the adequacy of this Disclosure Statement may be filed until two-weeks before the date set for a hearing on confirmation of the Plan.*

**1.4     Definitions**

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any capitalized term not defined

herein that is defined in the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.  Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in this Disclosure Statement:

(a)    "**Administrative Claims.**"   Claims arising during the administration Debtor's Chapter 11 case entitled to priority under Section 507(a)(1) of the Bankruptcy Code. As required by the Bankruptcy Code, holders of such Allowed Administrative Claims against Debtor shall receive cash in the amount of such allowed claim on the Effective Date.

(b)    "**Allowed Claim.**"   This term will refer to and mean every claim: (i) as to which a proof of claim has been filed with the Court within the time fixed by the Court or, if such claim arises from the Debtor's rejection of an unexpired lease or other executory contract, within thirty (30) days after the Effective Date of the Plan, or (ii) which is scheduled as of the Confirmation Date of the Plan in the schedules filed by the Debtor or amended by the Debtor as of said date, and is liquidated in amount and undisputed; and in either of the above events, as to which no objection to allowance of such claim or request for subordination thereof has been filed within any applicable time period fixed by the Court or as to which an order allowing such claim and establishing its priority has become final and non-appealable.  An allowed secured claim shall include all accrued interest and attorneys fees, to the extent the same are allowable under 11 U.S.C. § 506, and to the extent attorneys fees are reasonable or are approved by the Bankruptcy Court after notice and hearing.

(c)    "**Allowed Class 2 Secured Claim**"   This term shall mean the allowed secured portion of the claim of City National Bank, in accordance with 11 U.S.C. §506, which shall be in the amount of $480,000.00, or such other amount that is established to be the value of City National Bank's secured interest in 3215 Mill Street, Reno, NV.

(d)    "**Allowed Class 2 Unsecured Claim**"   This term shall mean the allowed unsecured portion of the claim of City National Bank, in accordance with 11 U.S.C. §506, which shall be in the amount of $1,437,691.47.

(e)    "**Allowed Class 3 Secured Claim**"   This term shall mean the allowed secured portion of the claim of Wells Fargo Home Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $400,000.00, or such other amount that is established to be the value of Welss

Fargo Home Mortgage's secured interest in 3465 Falcon Way, Reno, NV.

(f)    **"Allowed Class 3 Unsecured Claim"**    This term shall mean the allowed unsecured portion of the claim of Wells Fargo Home Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $99,135.00.

(g)    **"Allowed Class 4 Secured Claim"**    This term shall mean the allowed secured portion of the claim of Carrington Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $50,000.00, and is secured by a first priority deed of trust against 1612 Keystone Avenue, Reno, NV.

(h)    **"Allowed Class 4 Unsecured Claim"**    This term shall mean the allowed unsecured portion of the claim of Carrington Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $210,571.00.

(i)    **"Allowed Class 5 Secured Claim"**    This term shall mean the allowed secured portion of the claim of Greater Nevada Credit Union, in accordance with 11 U.S.C. §506, which shall be in the amount of $16,000.00, and is secured by a purchase money security interest in Debtor's 2006 Chevrolet 2500 pick-up truck.

(j)    **"Allowed Class 6 Secured Claim"**    This term shall mean the allowed secured portion of the claim of Linda Barrett, in accordance with 11 U.S.C. §506, which shall be in the amount of $8,000.00, which is the value of Linda Barrett's secured interest in Debtor's 1988 Porsche Convertible.

(k)    **"Allowed Class 6 Unsecured Claim"**    This term shall mean the allowed unsecured portion of the claim of Linda Barrett, in accordance with 11 U.S.C. §506, which shall be in the amount of $4,000.00.

(l)    **"Allowed Class 7 Secured Claim"**    This term shall mean the allowed secured claim of the Washoe County Treasurer, in accordance with 11 U.S.C. §506, which shall be in the amount of $23,028.86.

(m)    **"Allowed Class 8 Priority Unsecured Claim"**    This term shall mean the allowed unsecured claim of the Internal Revenue Service, in accordance with 11 U.S.C. §507, which shall be in the amount of $0.00.

(n)    "**Bankruptcy Case.**"  This term shall mean the pending Chapter 11 case entitled Michael Decker, an individual, Case No. BK-N-10-54972-GWZ.

(o)    "**Bankruptcy Code.**" or "**Code.**"  These terms mean the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

(p)    "**Bankruptcy Court.**"  This term means the United States Bankruptcy Court for the District of Nevada, Reno, or such other court as has jurisdiction of these Chapter 11 cases.

(q)    "**Claim.**"  This term means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(r)    "**Confirmation Date.**"  This term refers to and shall mean the date on which the Court enters its Order confirming Debtor's Plan of Reorganization, or any subsequently amended plan of reorganization.

(s)    "**Confirmation Hearing**."  This term shall mean the hearing or hearings in which the Bankruptcy Court considers confirmation of the Plan.  The actual date of the hearing can be found on the Notice of Hearing, served herewith.

(t)    "**Debtor**."  The term Debtor means Michael Decker, the Chapter 11 Debtor in Case No. BK-N-10-54972-GWZ.

(u)    **Debtor' Current Monthly Income.**"  This term means the income received by Debtor from all sources, which currently totals $12,666.67.

(u)    **"Debtor' Current Monthly Expenses."**  This term means: (1) amounts reasonably necessary to be expended for the maintenance support of the Debtor, or dependents of the Debtor; (2) charitable contributions as that term is defined under section 548(d)(3) of the Code; and (3) amounts reasonably necessary to be expended for the payment of the expenditures necessary for the continuation, preservation and operations of Debtor's rental and business activities, which currently

totals $11,800.00.

(v)    **"Debtor' Disposable Monthly Income."**  This term shall mean Debtor' Current Monthly Income less Debtor' Current Monthly Expenses, which amount currently equals $866.67.

(w)    "**Disclosure Statement.**"  Disclosure Statement means this Disclosure Statement filed by the Debtor, as amended, and as approved by the Bankruptcy Court.

(x)    "**Effective Date.**"  This term shall mean the date which is the first day of the first month at least thirty (30) days following the Confirmation Date.

(y)    "**Notice of Hearing.**"  This term shall mean the *Notice Of Hearing For Final Approval Of Debtor' Disclosure Statement And Confirmation Of Chapter 11 Plan Of Reorganization* filed with the Court in this case, a copy of which is served with this Disclosure Statement.

(z)    "**Petition Filing Date.**"  This term shall refer to December 24, 2010, the date on which Debtor filed their voluntary petition commencing the above-captioned Chapter 11 case.

(aa)    "**Plan.**"  This term shall refer to Debtor' Plan of Reorganization, together with any amendments or modifications thereto as may hereafter be filed by the Debtor.

(bb)    "**Plan Term.**"  This term shall mean a period of sixty (60) months beginning on the Effective Date.

(cc)    "**Post Confirmation.**"  This term shall mean the period of time after the Confirmation Date.

(dd)    "**Priority Claims.**"  This term shall refer to professional fees incurred by the Debtor in connection with this Case.  Debtor believes that, except for attorneys fees, there will be no Class 1 Priority Claims against the Debtor at the time of confirmation.  Debtor estimate that their unpaid attorney's fees, through the confirmation hearing, will be approximately $20,000.00.

(ee)    "**Reorganized Debtor.**"  This term means Michael Decker following the Confirmation Date.

(ff)    "**Scheduled Claim.**"  This means the total amount of a creditors pre-petition claim against the Debtor, as set forth in the Schedules to Debtor' Bankruptcy Petition.

(gg)    "**Unsecured Claim.**"  This shall mean a Claim that is not secured by a pledge of or security interest in any of the Debtor's property.

1    **2.     INFORMATION REGARDING THE CHAPTER 11 DEBTOR**

2         **2.1     Description and History of the Debtor's Business**

3         The Debtor is an individual.  His primary source of income is from is operation of Dent Doctor,

4    Inc., dba The Dent Doctor, which is an auto body repair shop located in Reno, Nevada.  Debtor is

5    employed by The Dent Doctor and earns an annual salary of $26,000.00.  In addition, the Debtor

6    receives disbursements of profit from The Dent Doctor which range from $3,000 to $8,000.  The

7    Debtor is also in the business owning and leasing investment real estate.  At the time of his Chapter 11

8    filing, Debtor owned two (2) rental properties: (1) 1612 Keystone, Ave, Reno, NV 89503; and (2) 3215

9    Mill Street, Reno, NV 89520.  The Keystone property is currently vacant, but can be rented for

10   $1,000.00 per month.  The Dent Doctor, Inc. is currently the tenant of the Mill Street property and pays

11   Debtor monthly rent of $3,000.00.

12        **2.2     Events Leading to Chapter 11 Filing**

13        Debtor's Chapter 11 filing was in part a result of the well documented nationwide, and

14   particularly dramatic local, economic downturns.  The Dent Doctor saw substantial drops in revenues.

15   At the same time, Debtor's real estate investments were negatively impacted by the associated real

16   estate market collapse, which decreased values and rental rates for Debtor' investment properties.  As a

17   result, the Debtor defaulted on his payment obligations to various creditors and was facing foreclosures

18   on his real estate.

19   **3.     DEVELOPMENTS DURING THE COURSE OF THIS CHAPTER 11 CASE**

20        **3.1     Meeting of Creditors**

21        The United States Trustee conducted a meeting of creditors pursuant to 11 U.S.C. §341 on

22   January 31, 2011. The Debtor appeared with his Counsel.  Secured Credit City National Bank appeared

23   through counsel.  No other creditors attended the meeting.

24        **3.2     Schedules and Statement of Affairs**

25        The Debtor filed its schedule of assets and liabilities and statement of financial affairs on

26   December 24, 2010, which were amended on January 31, 2011. Those schedules and statements may

27   be viewed online at www.nvb.uscourts.gov or may be obtained from the Bankruptcy Clerk for a fee.

28    ///

### 3.3    Monthly Operating Reports

Monthly operating reports reflecting the Debtor's ongoing financial status are filed with the United States Bankruptcy Court and can be viewed online at www.nvb.uscourts.gov.  The Debtor's most recent Monthly Operating Report is attached hereto as Exhibit 2.

### 3.4    Employment of General Counsel

On January 27, 2011, Debtor filed an application to employ Kevin A Darby, Esq., as general counsel for the Debtor.

### 3.5    Creditors Committee

There has been no appointment of a creditor's committee pursuant to 11 U.S.C. § 1102.

## 4.    DESCRIPTION OF ASSETS

### 4.1    Description of Real Property

| Description | Fair Market Value | Total Secured Debt | Debtor' Net Equity |
|---|---|---|---|
| 3645 Falcon Way–Reno, Nevada, 89509 (Single Family Residence) | $400,000.00 | $499,135.00 | $0.00 |
| 3215 Mill Street - Reno, Nevada, 895(Commercial/Industrial Property) | $480,000.00 | $1,917,691.47 | $0.00 |
| 1612 Keystone Ave.  Reno, NV, 89503 (Single Family Residence) | $50,000.00 | $260,571.00 | $0.00 |
| **TOTAL** | **$930,000.00** | **$2,677,397.47** | **$0.00** |

///
///
///
///

### 4.2    Description of Personal Property

The Debtor personal property consists of the following:

| Description | Fair Market Value | Secured Debt/State Law Exemptions | Estate's Net Equity |
|---|---|---|---|
| Cash On Hand, Including Bank Accounts | $2,100.00 | $1,575.00 | $525.00 |
| Household Goods, Furniture, Appliances and Clothing | $5,900.00 | $5,900.00 | $0.00 |
| Qualified Retirement Accounts | $7,000.00 | $7,000.00 | $0.00 |
| Stock The Dent Doctor, Inc. | $7,500.00 | $0.00 | $7,500.00 |
| Sporting Goods | $950.00 | $950.00 | $0.00 |
| 1988 Porsche | $8,000.00 | $12,000.00 | $0.00 |
| 2006 Chevrolet 2500 Pickup | $16,000.00 | $17,000.00 | $0.00 |
| 2003 Supra Launch Boat | $10,000.00 | $0.00 | $10,000.00 |
| 1997 Ski Doo | $1,000.00 | $0.00 | $1,000.00 |
| **TOTAL** | **$52,450.00** | | **$19,025.00** |

## 5.    DESCRIPTION OF DEBTS

### 5.1    Administrative Claims

(A)    <u>Attorneys Fees/Kevin A Darby, Esq</u>. The Debtor will be obligated to pay attorneys fees and costs to Darby Law Practice, Ltd. in connection with this case.  Through Plan confirmation, Debtor estimate those fees and costs that will be $15,000.00, but the final amount is subject to change.

(B)    <u>U.S. Trustee Fees</u>. All fees required to be paid to the United States Trustee will be paid in full upon the Effective Date of the Debtor's Plan. U.S. Trustee fees due in this case have been paid.

### 5.2    Priority Claims

(A)    Washoe County Treasurer

The Washoe County Treasurer has filed a priority proof of claim in the amount of $23,028.86 for unpaid real property taxes on

(B)    Internal Revenue Service

The Internal Revenue Service has not yet filed a proof of claim, but Debtor may have 2009 personal Federal Income Tax liability.

### 5.3 Secured Claims

| **CREDITOR** | **NATURE OF LIEN** | **AMOUNT OF SECURED CLAIM** |
|---|---|---|
| CITY NATIONAL BANK | First Mortgage Lien against 3215 Mill Street, Reno, NV | $1,917,691.47 |
| WELLS FARGO HOME MORTGAGE | First Mortgage Lien against 3645 Falcon Way, Reno, NV | $499,135.00 |
| CARRINGTON MORTGAGE | First Mortgage Lien against 818 San Jose Place, San Diego, CA | $260,571.00 |
| GREATER NEVADA CREDIT UNION | Purchase Money Security in 2006 Chevrolet 2500 Pickup | $16,869.00 |
| LINDA BARRETT | Perfected Lien against 1988 Porsche | $12,000.00 |

### 5.4 Unsecured Claims

The Debtor has scheduled the following unsecured claims:

| Creditor | Basis of Claim | Est. Amount of Claim |
|---|---|---|
| Bank of America | Credit Card | $44,008.00 |
| Bank of America | Credit Card | $17,146.00 |
| Carrington Mortgage | Mortgage Deficiency | $0.00 |
| Nevada State Bank | Line of Credit | $87,000.00 |
| **Scheduled Unsecured Claims** | | **$148,154.00** |
| *Reclassified Secured Claims* | Classes 2, 4 & 6 | **$1,751,397.47** |
| **Total Unsecured Claims** | | **$1,899,551.47** |

**5.5     Claims Deadline**

In accordance with the Bankruptcy Court's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines filed on December 24, 2010, the deadline for filing a proof of claim for all creditors in this action is May 2, 2011, and July 31, 2011 for governmental agencies.

**6.     EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan:

| Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| The Dent Doctor, Inc. | Commercial Real Property Lease |

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

**7.     DESCRIPTION OF PENDING AND COMPLETED LITIGATION**

The Debtor was not a party to litigation prior to the commencement of this case, and does not anticipate initiating any litigation as part of this Plan, including avoidance claims under the Code.

**8.     SUMMARY OF PLAN OF REORGANIZATION**

THE FOLLOWING IS A BRIEF SUMMARY OF THE PLAN OF REORGANIZATION WHICH IS FILED CONCURRENTLY HEREWITH, AND SHOULD NOT BE RELIED UPON FOR VOTING PURPOSES. THE SUMMARY IS NOT COMPLETE, AND CREDITORS ARE URGED TO READ THE PLAN IN FULL.  A COPY OF THE PLAN OF REORGANIZATION IS ATTACHED HERETO AS EXHIBIT 1.  TO THE EXTENT THE FOLLOWING SUMMARY INCLUDES DEFINED TERMS, THOSE DEFINITIONS ARE INCLUDED IN THE PLAN FILED CONCURRENTLY HEREWITH. ALL CAPITALIZED TERMS HEREINAFTER HAVE THE MEANINGS SET FORTH IN THE PLAN.

///

**8.1    Classification and Treatment of Claims**

The Plan designates ten (10) classes of claims. Those classes take into account the differing nature and priority of the various classified claims under the Bankruptcy Code.  The following table briefly summarizes the classification and treatment of all Claims under the Plan and the consideration distributable on account of such Claims under the Plan.  The information set forth in the following table is for convenience of reference only, and each holder of a Claim should refer to the Plan for a full understanding of the classification and treatment of Claims provided for under the Plan. Claims will receive designated treatment within a Class only to the extent Allowed within that class. The Claim allowance procedure is an ongoing process and the actual amount of the Allowed Claims may vary from the estimates.  For a complete description of the risks associated with the recoveries provided under the Plan, see Section 11 of the Plan, entitled "Certain Risk Factors To Be Considered."

| CLASS | CLAIMS | SUMMARY OF TREATMENT |
|---|---|---|
| Class 1 | Priority Claims | Paid in full as detailed in Section 8.2 below |
| Class 2 | City National Bank | Claim bifurcated and restructured as detailed in Section 8.2 below |
| Class 3 | Wells Fargo Home Mortgage | Paid in full on modified terms as detailed in Section 8.2 below |
| Class 4 | Carrington Mortgage | Claim bifurcated and restructured as detailed in Section 8.2 below |
| Class 5 | Greater Nevada Credit Union | Paid in full on modified terms as detailed in Section 8.2 below |
| Class 6 | Linda Barrett | Claim bifurcated and restructured as detailed in Section 8.2 below |
| Class 7 | Washoe County Treasurer | Paid in full as detailed in Section 8.2 below |
| Class 8 | Internal Revenue Service | Paid in full as detailed in Section 8.2 below |
| Class 9 | General Unsecured Creditors | Paid 5% of claim, as detailed in Section 8.2 below |
| Class 10 | Individual Debtor | See Section 8.2 below |
| N/A | Nonclassified Administrative Expenses | Paid in full on the latest of (a) on or before the Effective Date; (b) when due or such later date as approved by the claimant; or (c) when allowed by Final Order |
| N/A | Nonclassified Priority Tax Claims | Paid in full on the latest of (a) on or before the Effective Date; (b) when due or such later date as approved by the claimant; or (c) when allowed by Final Order |

**8.2    Treatment of Claims And Interests.**

**(A)    Administrative Claims**

Except as provided in section 8.2(c)(i), Claims arising during the administration of the Debtor's Chapter 11 case and entitled to priority under Section 507(a)(1) of the Bankruptcy Code are not classified under the Plan.  Except as otherwise provided in the Plan, holders of such claims shall be paid in full on the latter of the Effective Date, or fifteen (15) days after entry of an order creating an Allowed Administrative Claim, unless holders of an Allowed Administrative Claim agree to alternative treatment.

**(B)    Unclassified Priority Claims**

All allowed unclassified priority claims shall bear interest as allowed by applicable statute and shall be paid by equal quarterly disbursements of the amount owed, but in any case not less than $500.00, to be paid in full within six (6) years of the date of assessment. Such distribution shall be subordinate to the payment of allowed administrative claims and shall be in full satisfaction of all priority claims.

**(C)    Classified Claims**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.  Each creditor class shall be treated as follows:

**1.    Class 1 (PRIORITY CLAIMS)**

Each holder of a Class 1 Priority Claim will be paid in full from the Debtor' Disposable Monthly Income.  The Allowed Class 1 Priority Claims shall receive monthly disbursements of the Debtor' Disposable Monthly Income, commencing on the later of the fifth (5th) day of the first (1st) month following the Effective Date of the Plan, until each Class 1 claim is paid in full without interest. Debtor believes that, except for attorney's fees, there will be no Class 1 Priority Claims against the Debtor at the time of confirmation.  Debtor estimates that their unpaid attorney's fees, through the confirmation hearing, will be approximately $20,000.00.

///

**2.   Class 2 (CITY NATIONAL BANK)**

The Class 2 claim is impaired by this Plan and shall be treated under the Plan as follows:

**(a)      Treatment of Allowed Class 2 Secured Claim**

The Allowed Class 2 Secured Claim shall be paid in full on or before March 5, 2021.  In the interim, the Class 2 claim shall bear interest at the rate of 5.0% per annum.  Debtor shall make monthly principal and interest payments to the Class 2 claimholder on its Class 2 claim based on a twenty five (25) year amortization schedule.  Those monthly payments shall be in the amount of $2,630.56 and shall commence on fifth (5th) day of the first (1st) month following the Effective Date, and continue on the fifth (5th) day of each month thereafter until the Allowed Class 2 Secured Claim is paid in full.

The entire then outstanding principal balance of the Allowed Class 2 Secured Claim, together with any and all accrued interest, fees and costs due thereunder shall be due and payable in full on or before December 31, 2018.  There will be no prepayment penalty.  The Allowed Class 2 Secured Claim shall retain its lien until paid in full.

**(b)      Treatment of Allowed Class 2 Unsecured Claim**

The Allowed Class 2 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

**(c)      Loan Documents Remain In Limited Effect**

The terms of the promissory note underlying the Allowed Class 2 Secured Claim and the related deed of trust (the "Class 2 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

**(d)      Plan Default**

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 2 claimholder shall be entitled to enforce all of the terms of the Class 2 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 2 Secured Claim at any foreclosure sale.

### 3.  Class 3 (WELLS FARGO HOME MORTGAGE)

The Class 3 Claim of Wells Fargo is impaired shall be treated under the Plan as follows:

#### (a)    <u>Treatment of Allowed Class 3 Secured Claim</u>

The Allowed Class 3 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 3 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of three hundred and sixty (360) months and shall bear interest at the rate of four percent (4%) per annum, which produces monthly principal and interest payments in the amount of $1,909.66, plus the required escrow payment for taxes and insurance, currently $485.19, for a total monthly payment of $2,394.85.  Debtor may pay the outstanding balance of the Allowed Class 3 Secured Claim at any time prior to the expiration of the 360-month term without pre-payment penalty.

#### (b)    <u>Treatment of Allowed Class 3 Unsecured Claim</u>

The Allowed Class 3 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

#### (c)    <u>Loan Documents Remain In Limited Effect</u>

The terms of the promissory note underlying the Allowed Class 3 Secured Claim and the related deed of trust (the "Class 3 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

#### (d)    <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 3 claimholder shall be entitled to enforce all of the terms of the Class 3 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 3 Secured Claim at any foreclosure sale.

### 4.  Class 4 (CARRINGTON MORTGAGE)

The Class 4 Claim of Carrington Mortgage is impaired and shall be treated under the Plan as

follows:

### (a)    Treatment of Allowed Class 4 Secured Claim

The Allowed Class 4 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 4 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of three hundred and sixty (360) months and shall bear interest at the rate of four and one-half percent (4.5%) per annum, which produces monthly principal and interest payments in the amount of $253.34, plus the required escrow payment for taxes and insurance. Debtor may pay the outstanding balance of the Allowed Class 4 Secured Claim at any time prior to the expiration of the 360-month term without pre-payment penalty.

### (b)    Treatment of Allowed Class 4 Unsecured Claim

The Allowed Class 4 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

### (c)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 4 Secured Claim and the related deed of trust (the "Class 4 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

### (d)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 4 claimholder shall be entitled to enforce all of the terms of the Class 4 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 4 Secured Claim at any foreclosure sale.

### 5.  Class 5 (GREATER NEVADA CREDIT UNION)

The Class 5 Claim of Greater Nevada Credit Union is impaired and shall be treated under the Plan as follows:

///

(a)    **Treatment of Allowed Class 5 Secured Claim**

The Allowed Class 5 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 5 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of sixty (60) months and shall bear interest at the rate of four percent (4.0%) per annum, which produces monthly principal and interest payments in the amount of $294.66.  Debtor may pay the outstanding balance of the Allowed Class 5 Secured Claim at any time prior to the expiration of the 60-month term without pre-payment penalty.

(b)    **Loan Documents Remain In Limited Effect**

The terms of the promissory note underlying the Allowed Class 5 Secured Claim and the related deed of trust (the "Class 5 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(c)    **Plan Default**

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 5 claimholder shall be entitled to enforce all of the terms of the Class 5 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, repossession of its collateral and the opportunity to credit bid the entire amount the Allowed Class 5 Secured Claim at any foreclosure sale.

**6.  Class 6 (LINDA BARRETT)**

The Class 6 claim of LINDA BARRETT is impaired and shall be treated under the Plan as follows:

(a)    **Treatment of Allowed Class 6 Secured Claim**

The Allowed Class 6 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 6 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of thirty-sixty (36) months and shall bear interest at the rate of four percent (4.0%) per annum, which produces monthly principal and interest payments in the amount

1    of $236.19.  Debtor may pay the outstanding balance of the Allowed Class 6 Secured Claim at any time

2    prior to the expiration of the 36-month term without pre-payment penalty.

3        **(b)**  **Treatment of Allowed Class 4 Unsecured Claim**

4       The Allowed Class 4 Unsecured Claim shall be reclassified to Class 9 and treated as an

5    unsecured creditor in accordance with this Plan.

6        **(c)**  **Loan Documents Remain In Limited Effect**

7       The terms of the promissory note underlying the Allowed Class 4 Secured Claim and the related

8    deed of trust (the "Class 4 Loan Documents") shall remain in full force and effect, except as modified

9    by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

10       **(d)**  **Plan Default**

11      In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such

12   default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel,

13   the Class 4 claimholder shall be entitled to enforce all of the terms of the Class 4 Loan Documents, in

14   additional to all rights available under Nevada law, including, without limitation, foreclosure its

15   collateral and the opportunity to credit bid the entire amount the Allowed Class 4 Secured Claim at any

16   foreclosure sale.

17       **7.  Class 7 (WASHOE COUNTY TREASURER)**

18      The Allowed Class 7 Priority Unsecured Claim of the Washoe County treasurer is impaired, but

19   will be paid in full from Debtor' Disposable Monthly Income.  The Allowed Class 9 Priority Claims

20   shall monthly disbursements of the Debtor' Disposable Monthly Income, commencing the 5th day of

21   the first month following the payment in full of all Class 1 Priority Claims, until the Class 9 claim is

22   paid in full without interest.

23       **8.  Class 8 (INTERNAL REVENUE SERVICE)**

24      The Allowed Class 8 Priority Unsecured Claim of the Internal Revenue Service will be paid in

25   full on the Effective Date of this Plan.

26       **9.  Class 9 (UNSECURED CREDITORS)**

27      The Allowed Class 9 Unsecured Creditors shall receive monthly disbursements of the Debtor'

28   Disposable Monthly Income, commencing the 5th day of the first month following the payment in full

of all Class 9 Priority Claims Unsecured Claims, and continuing until the conclusion of the Plan Term or until each Allowed Class 9 General Unsecured Claim is paid an amount equal to 5% of each claim, whichever occurs later.  It is estimated that this will require the Debtor to pay a minimum combined total of $94,977.00.

All portions of allowed Class 9 claims that remain unpaid at the conclusion of all required payments to Class 9 under this Plan shall be forever discharged and rendered non-collectable against the Debtors.

**10. Class 10 (THE DEBTOR)**

All estate property not sold or liquidated pursuant to this Plan shall revest in the Debtor on the Effective Date of this Plan.

**8.3    Means of Implementing and Funding the Plan**

**(i)    Funding The Plan**

The payments to Class 1, Class 7 and Class 9 creditors required under the Plan will be funded by the Debtor' Disposable Monthly Income.  Commencing on the Effective Date, Debtor shall make quarterly distributions to Class 1, Class 7 and Class 9 claims, in accordance with the terms of this Plan, during the entire Plan Term, and beyond to the extent required by this Plan.  The combined total of each quarterly disbursement shall be no less than $5,000.00, but may be more depending on the profitability of Debtor's business operations.  Commencing on the Effective Date, Debtor shall make quarterly prorata distributions of Debtor' Disposable Monthly Income to Allowed Class 1 Priority Claims, and continuing on the fifth day of every third month thereafter until all Allowed Class 1 Priority Claims are paid in full without interest.  When the Allowed Class 1 Priority Unsecured Claims are fully satisfied, Debtor shall commence making quarterly payments to the Class 7 Priority Unsecured Creditor, until paid in full.  When the Allowed Class 7 Priority Unsecured Claims are fully satisfied, Debtor shall commence making quarterly payments to the Class 9 General Unsecured Creditors, until the completion of the Plan Term, or until each Allowed Class 9 Unsecured Claim receives 5% of its claim, whichever occurs later.

Payments to Class 2, Class 4, Class 5, Class 7 and Class 8 shall be funded from Debtor rental income from the ongoing operation of their rental business, and from employment.

Any prorated payment to creditors whose claims are not liquidated or disputed shall be paid into a segregated trust account maintained at the Darby Law Practice until such claims are an allowed claim, in which event the proceeds shall be disbursed, or such claims shall be disallowed, in which case such sums shall be included in the next disbursement to creditors.

### (ii) Revesting of Assets in the Debtor

Upon confirmation of the Plan, all property of the estate shall be revested in Reorganized Debtor, pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

### (iii) Disbursing Agent

The Reorganized Debtor will serve as disbursing agent and shall disburse all property to be distributed under the Plan. The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

### (iv) Request for Application of 11 U.S.C. § 1129(b)

The Debtor, as Plan proponent, will request the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

## 9. POST-CONFIRMATION MANAGEMENT OF THE DEBTOR

The Debtor intends to continue to manage his financial affairs on a day-to-day basis after the confirmation of the Plan. However, Debtor reserves the right to employ management professionals as the Debtor deems advisable following the Confirmation Date.

## 10. ALTERNATIVES TO THE PLAN

The Debtor believes that the Plan provides its creditors with the earliest and greatest possible value that can be realized on his claims. Under § 1121 of the Bankruptcy Code, the Debtor has the exclusive right to file a plan of reorganization during the first 120 days after commencement of its Chapter 11 case, or as otherwise extended by the Court. The Plan was filed within such 120 day period. In addition, if the Plan is not accepted, other parties in interest may have an opportunity to file an alternative plan of reorganization. Alternatively, a liquidation of the Debtor's assets could be conducted as described in Section 13 of this Disclosure Statement. For the reasons described in that

section, Debtor believes that the distribution to each impaired class under the Plan will be greater and earlier than distributions that might be received in a Chapter 7 liquidation of the Debtor's assets.

## 11.    CERTAIN RISKS TO BE CONSIDERED

HOLDERS OF CLAIMS AGAINST THE DEBTOR SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS ATTACHED OR DELIVERED HEREWITH AND/OR INCORPORATED HEREIN BY REFERENCE), IN DETERMINING WHETHER OR NOT TO ACCEPT OR REJECT THE DEBTOR'S PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 11.1    Risk of Non-Confirmation of the Plan

Because the Plan provides for the reorganization of the Debtor, many of the common risk factors found in typical reorganizations apply with respect to the Plan.  These include (a) the value of the Debtor's property has suffered significantly as a result of the downturn in the United States economy since the summer of 2007.  There is no assurance that the economy will turn around and that property values, in general, or the value of the Debtor's Property, in particular, will not continue to decline; (b) the Plan is dependent, at least in part, on continued renting of Debtor' investment properties.  There is no assurance that the Debtor' predictions will occur, or that these predictions will occur within the time period projected in the Plan; (c) because the Plan is dependent on continued rental activity, there is a risk that the projections of net operating income, with which to pay the Allowed Claims of Creditors, may not be met. Debtor is unaware of any regulatory contingencies or risks in connection with the Plan.

### 11.2    Non-Consensual Confirmation

In the event one or more impaired Classes of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor' request, if all other conditions for confirmation have been met and at least one impaired Class has accepted the Plan (such acceptance being determined without including the vote of any "insider" in such Class) and, as to each impaired Class that has not accepted the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the

rejecting impaired classes.  The Debtor believe that the Plan satisfies those requirements.

**11.3    Tax Consequences of the Plan**

The Debtor believes that there are no federal income tax consequences peculiar to its Plan. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH HIS/HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES TO HIM/HER OF THE PLAN.

**11.4    Estimated Amounts**

The valuations provided on the Debtor' schedules were based on the estimates of the Debtor, based on knowledge of the real estate market.  Those estimates are a reflection of the Debtor' best subjective valuation at the time.  In light of the current wide-range volatility of the commercial real estate market, it is difficult to predict what the values will be at the time of any sale of Debtor' assets. Furthermore, the liquidation value of real property is generally far below fair market value, further compounding the ability to accurately determine the value of the Debtor' assets. In light of the volatile real estate market, declining values and the discounted value for a liquidation sale, all creditors and parties in interest should be aware that the amounts received for the sale of the Debtor' real property assets could significantly vary the values listed on the Debtor' schedules and the estimates provided in the Plan and this Disclosure Statement.

**11.5    Liquidation Analysis**

Should the Debtor be forced to terminate its business operations or convert its case to Chapter 7 and have a trustee conduct the liquidation of its assets, Debtor estimates that such a liquidation may result in payment only to certain secured creditors.  If secured creditors are permitted to conduct a foreclosure sale of his respective collateral, junior lien claimants, the Internal Revenue Service and unsecured creditors will receive no payment on his claims.  The Debtor believes the value of its property can only be enhanced by Debtor' continued operation.

Below is Debtor' estimated analysis and projected return to creditors upon a liquidation.

ASSETS:

| | |
|---|---|
| Real Property | $930,000.00 |
| Cash | $2,100.00 |
| Household Goods and Furnishings, Misc. | $5,400.00 |
| Personal Clothing | $500.00 |
| Sporting Goods | $950.00 |
| Retirement Accounts | $7,000.00 |
| The Dent Doctor, Inc. | $7,500.00 |
| Vehicles/Boats | $35,000.00 |

**TOTAL ASSETS:** **$988,450.00**

LIABILITIES:

| | |
|---|---|
| Secured Claims on Property | $954,000.00 |
| Debtor's Exemption Rights | $15,425.00 |
| Priority Tax Claims | $23,028.86 |

**TOTAL CLAIMS AND EXEMPTIONS
IN PRIORITY OVER UNSECURED CREDITORS** **$992,453.86**

*Estimated Liquidation Costs:* *$7,500.00*

**TOTAL ESTIMATED FUNDS AVAILABLE TO PAY
UNSECURED CREDITORS:** **$0.00**

**PERCENTAGE AVAILABLE TO UNSECURED
CREDITORS UPON LIQUIDATION:** **0.0%\***

(*Estimated distribution to general unsecured creditors of under Debtor' Chapter 11 Plan is 10%*)

## 12.    CONFIRMATION OF THE PLAN

### 12.1    Confirmation Requirements and Procedures

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.   A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both: (1) allowed or allowed for voting purposes; and (2) impaired.

In this case, the Plan Proponent believes that classes 2, 3, 4, 5, 6, 7, 8 and 9 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan.

### B.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

*The deadline for filing a proof of claim in this case is May 2, 2011.*

### C.    *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

### D.    *Who is Not Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed

equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and
- administrative expenses.

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.*

**E.    *Who Can Vote in More Than One Class***

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**12.2    Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

**A.    *Votes Necessary for a Class to Accept the Plan***

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast his votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast his votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast his votes to accept the Plan.

**B.    *Treatment of Nonaccepting Classes***

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the

Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

### 12.3   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. Debtor' liquidation analysis is set forth in section 11.5, above.

### 12.4.   Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

### A.     *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.

### B.     *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments. The Debtor' financial projections show that the Debtor will have an average aggregate net monthly cash flow, after paying operating expenses and post-confirmation taxes, of $866.67. More specifically, the Debtor' has projected his going forward monthly financial condition as follows:

INCOME:

| | |
|---|---|
| Rental Income From Mill Street: | $3,000.00 |
| Rental Income from Keystone Avenue | $1,000.00 |
| Debtor's Monthly Income: | $2,166.67 |
| Monthly Profit From Operation of The Dent Doctor: | $6,000.00 |
| **TOTAL INCOME** | **$12,166.67** |

EXPENSES:

| | |
|---|---|
| Modified Secured Debt Obligations Under Plan (w/ estimated impounds): | $6,500.00 |
| Personal Utilities (Inc. Power, Phone, Water, Cells, Cable/Internet, Etc.) | $   700.00 |
| Food, Clothing, Household and Good Supplies | $   750.00 |
| Medical and Dental Expenses | $   300.00 |
| Transportation Expenses | $   350.00 |
| Insurance (Auto, Health, Life, Liability & Homeowners | $1,000.00 |
| Recreation | $   100.00 |
| Taxes (Federal/State Income Tax and Real Property Tax) | $1,200.00 |
| Household Maintenance and Repairs | $   100.00 |
| Rental Property Expenses | $   300.00 |
| **TOTAL EXPENSES** | **[$11,300.00]** |
| ***Debtor' Disposable Monthly Income*** | ***$866.67*** |

*You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

**12.5     Objections to Confirmation of the Plan.**

Section 1128(b) provides that any party-in-interest may object to confirmation of a plan. Any objections to confirmation of the Plan must be in writing, must state with specificity the grounds for any such objections and must be filed with the Bankruptcy Court and served upon the following parties so as to be received on or before the time fixed by the Bankruptcy Court:

Counsel for Debtor:

**Darby Law Practice, Ltd.**
**Kevin A. Darby, Esq.**
**4777 Caughlin Parkway**
**Reno, Nevada 89519**
**Telephone: 775.322.1237**
**Facsimile: 775.996.7290**
**Email: kevin@darbylawpractice.com**

**13.    DISCHARGE OF DEBTOR**

  Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments to unsecured creditors under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.  Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

  DATED this 25th day of February, 2011.

             DARBY LAW PRACTICE, LTD.

                 */s/ Kevin A. Darby*
        By:_____
         KEVIN A. DARBY, ESQ. (#7670)
         TRICIA M. DARBY, ESQ. (#7956)
         DARBY LAW PRACTICE, LTD.
         4777 Caughlin Parkway
         Reno, Nevada  89519

1

**EXHIBIT 1**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT 1**

26

27

28

KEVIN A. DARBY, ESQ. (#7670)
TRICIA M. DARBY, ESQ. (#7956)
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada  89519
Tel.    775.322.1237
Fax     775.996.7290
kevin@darbylawpractice.com

Attorneys for Debtor

*E-filed: February 25, 2011*

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

In re:                                            CASE NO. :  BK-N-10-54972-gwz

MICHAEL DECKER,                      Chapter 11

                Debtor.

_____/

# CHAPTER 11 PLAN OF REORGANIZATION

# FOR

# MICHAEL DECKER

1

## TABLE OF CONTENTS

2    1.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

3    2.    **DEFINITIONS**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4    3.    **CLAIMS AND INTERESTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5    4.    **TREATMENT OF CLAIMS AND INTERESTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6          4.1    Class 1 (Priority Claims). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

7          4.2    Class 2 (City National Bank). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

8          4.3    Class 3 (Wells Fargo Home Mortgage). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

9          4.4    Class 4 (Carrington Mortgage Services) . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

10         4.5    Class 5 (Greater Nevada Credit Union) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11         4.6    Class 6 (Linda Barrett) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12         4.7    Class 7 (Washoe County Treasurer) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

13         4.8    Class 8 (Internal Revenue Service) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

14         4.9    Class 9 (Unsecured Creditors). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

15         4.10   Class 10 (The Debtor) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

16   5.    **TREATMENT OF UNCLASSIFIED CLAIMS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17         5.1    Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18         5.2    Administrative Expense Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19         5.3    Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

20         5.4    United States Trustee Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

21         5.5    Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22         5.6    Delay of Distribution on a Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . .15

23         5.7    Settlement of Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

24   6.    **EXECUTORY CONTRACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

25   7.    **MEANS OF IMPLEMENTING AND FUNDING THE PLAN**. . . . . . . . . . . . . . . . . . . 16

26         7.1    Funding The Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

27         7.2    Revesting of Assets in the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

28         7.3    Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7.4     Request for Application of 11 U.S.C. § 1129(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

7.5     Post-Confirmation Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

7.6     Post-Confirmation Default. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

8.     **FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN** . . . . . . . . . . . . . . . . . . . .17

9.     **INJUNCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10.     **EXCULPATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11.     **MISCELLANEOUS PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12     **RETENTION OF JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

13.     **MODIFICATION OF PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

14.     **DISCHARGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

## 1.    INTRODUCTION

This Plan of Reorganization (the "Plan") under chapter 11 of the United States Bankruptcy Code proposes to pay creditors of MICHAEL DECKER from net cash flow from future income from the operation of his business.

This Plan provides for five (5) classes of secured claims, two (2) classes of priority unsecured claims, and one (1) class of general unsecured claims.  This Plan also provides for the payment of administrative and priority claims.   Unsecured creditors holding allowed claims will receive distributions, which will total at least five cents on the dollar ($0.05).  Debtors estimate this will require total combined payments to unsecured creditors of $94,977.00.  Debtors estimate that in a chapter 7 liquidation bankruptcy case, creditors would receive a total combined distribution of $0.00 or approximately zero cents on the dollar ($0.00).   Thus, this Plan provides unsecured creditors substantially more than they would receive in a liquidation case.

All creditors should refer to Sections 3-6 of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

## 2.    DEFINITIONS

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any capitalized term not defined herein that is defined in the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.  Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in this Plan:

(a)    "**Administrative Claims.**"   Claims arising during the administration Debtor's Chapter 11 case entitled to priority under Section 507(a)(1) of the Bankruptcy Code. As required by the Bankruptcy Code, holders of such Allowed Administrative Claims against Debtor shall receive cash in the amount of such allowed claim on the Effective Date.

(b)    "**Allowed Claim.**"  This term will refer to and mean every claim: (i) as to which a proof of claim has been filed with the Court within the time fixed by the Court or, if such claim arises from the Debtor's rejection of an unexpired lease or other executory contract, within thirty (30) days after the Effective Date of the Plan, or (ii) which is scheduled as of the Confirmation Date of the Plan in the schedules filed by the Debtor or amended by the Debtor as of said date, and is liquidated in amount and undisputed; and in either of the above events, as to which no objection to allowance of such claim or request for subordination thereof has been filed within any applicable time period fixed by the Court or as to which an order allowing such claim and establishing its priority has become final and non-appealable.  An allowed secured claim shall include all accrued interest and attorneys fees, to the extent the same are allowable under 11 U.S.C. § 506, and to the extent attorneys fees are reasonable or are approved by the Bankruptcy Court after notice and hearing.

(c)    "**Allowed Class 2 Secured Claim**"  This term shall mean the allowed secured portion of the claim of City National Bank, in accordance with 11 U.S.C. §506, which shall be in the amount of $480,000.00, or such other amount that is established to be the value of City National Bank's secured interest in 3215 Mill Street, Reno, NV.

(d)    "**Allowed Class 2 Unsecured Claim**"  This term shall mean the allowed unsecured portion of the claim of City National Bank, in accordance with 11 U.S.C. §506, which shall be in the amount of $1,437,691.47.

(e)    "**Allowed Class 3 Secured Claim**"  This term shall mean the allowed secured portion of the claim of Wells Fargo Home Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $400,000.00, or such other amount that is established to be the value of Welss Fargo Home Mortgage's secured interest in 3465 Falcon Way, Reno, NV.

(f)    "**Allowed Class 3 Unsecured Claim**"  This term shall mean the allowed unsecured portion of the claim of Wells Fargo Home Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $99,135.00.

(g)    "**Allowed Class 4 Secured Claim**"  This term shall mean the allowed secured portion of the claim of Carrington Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $50,000.00, and is secured by a first priority deed of trust against 1612 Keystone Avenue,

Reno, NV.

(h)  **"Allowed Class 4 Unsecured Claim"**   This term shall mean the allowed unsecured portion of the claim of Carrington Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $210,571.00.

(i)  **"Allowed Class 5 Secured Claim"**  This term shall mean the allowed secured portion of the claim of Greater Nevada Credit Union, in accordance with 11 U.S.C. §506, which shall be in the amount of $16,000.00, and is secured by a purchase money security interest in Debtor's 2006 Chevrolet 2500 pick-up truck.

(j)  **"Allowed Class 6 Secured Claim"**  This term shall mean the allowed secured portion of the claim of Linda Barrett, in accordance with 11 U.S.C. §506, which shall be in the amount of $8,000.00, which is the value of Linda Barrett's secured interest in Debtor's 1988 Porsche Convertible.

(k)  **"Allowed Class 6 Unsecured Claim"**  This term shall mean the allowed unsecured portion of the claim of Linda Barrett, in accordance with 11 U.S.C. §506, which shall be in the amount of $4,000.00.

(l)  **"Allowed Class 7 Secured Claim"**  This term shall mean the allowed secured claim of the Washoe County Treasurer, in accordance with 11 U.S.C. §506, which shall be in the amount of $23,028.86.

(m)  **"Allowed Class 8 Priority Unsecured Claim"**   This term shall mean the allowed unsecured claim of the Internal Revenue Service, in accordance with 11 U.S.C. §507, which shall be in the amount of $0.00.

(n)  "**Bankruptcy Case.**"  This term shall mean the pending Chapter 11 case entitled Michael Decker, an individual, Case No. BK-N-10-54972-GWZ.

(o)  "**Bankruptcy Code.**" or "**Code.**"  These terms mean the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

(p)  "**Bankruptcy Court.**"  This term means the United States Bankruptcy Court for the District of Nevada, Reno, or such other court as has jurisdiction of these Chapter 11 cases.

(q) **"Claim."** This term means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(r) **"Confirmation Date."** This term refers to and shall mean the date on which the Court enters its Order confirming Debtor's Plan of Reorganization, or any subsequently amended plan of reorganization.

(s) **"Confirmation Hearing."** This term shall mean the hearing or hearings in which the Bankruptcy Court considers confirmation of the Plan. The actual date of the hearing can be found on the Notice of Hearing, served herewith.

(t) **"Debtor."** The term Debtor means Michael Decker, the Chapter 11 Debtor in Case No. BK-N-10-54972-GWZ.

(u) **"Debtor' Current Monthly Income."** This term means the income received by Debtor from all sources, which currently totals $12,666.67.

(u) **"Debtor' Current Monthly Expenses."** This term means: (1) amounts reasonably necessary to be expended for the maintenance support of the Debtor, or dependents of the Debtor; (2) charitable contributions as that term is defined under section 548(d)(3) of the Code; and (3) amounts reasonably necessary to be expended for the payment of the expenditures necessary for the continuation, preservation and operations of Debtor's rental and business activities, which currently totals $11,800.00.

(v) **"Debtor' Disposable Monthly Income."** This term shall mean Debtor' Current Monthly Income less Debtor' Current Monthly Expenses, which amount currently equals $866.67.

(w) **"Disclosure Statement."** Disclosure Statement means this Disclosure Statement filed by the Debtor, as amended, and as approved by the Bankruptcy Court.

(x) **"Effective Date."** This term shall mean the date which is the first day of the first month at least thirty (30) days following the Confirmation Date.

(y)    "**Notice of Hearing.**"  This term shall mean the *Notice Of Hearing For Final Approval Of Debtor' Disclosure Statement And Confirmation Of Chapter 11 Plan Of Reorganization* filed with the Court in this case, a copy of which is served with this Disclosure Statement.

(z)    "**Petition Filing Date.**"  This term shall refer to December 24, 2010, the date on which Debtor filed their voluntary petition commencing the above-captioned Chapter 11 case.

(aa)    "**Plan.**"  This term shall refer to Debtor' Plan of Reorganization, together with any amendments or modifications thereto as may hereafter be filed by the Debtor.

(bb)    "**Plan Term.**"  This term shall mean a period of sixty (60) months beginning on the Effective Date.

(cc)    "**Post Confirmation.**"  This term shall mean the period of time after the Confirmation Date.

(dd)    "**Priority Claims.**"  This term shall refer to professional fees incurred by the Debtor in connection with this Case.  Debtor believes that, except for attorneys fees, there will be no Class 1 Priority Claims against the Debtor at the time of confirmation.  Debtor estimate that their unpaid attorney's fees, through the confirmation hearing, will be approximately $20,000.00.

(ee)    "**Reorganized Debtor.**"  This term means Michael Decker following the Confirmation Date.

(ff)    "**Scheduled Claim.**"  This means the total amount of a creditors pre-petition claim against the Debtor, as set forth in the Schedules to Debtor' Bankruptcy Petition.

(gg)    "**Unsecured Claim.**"  This shall mean a Claim that is not secured by a pledge of or security interest in any of the Debtor's property.

3.    **CLAIMS AND INTERESTS**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. Administrative Claims and Priority Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

3.1    <u>Class 1</u>.    All allowed claims entitled to priority under § 507 of the Code, including professional fees for Debtor's Counsel in this case.

3.2    <u>Class 2</u>.        The claim of CITY NATIONAL BANK, to the extent allowed as a secured claim under § 506 of the Code.

3.3    <u>Class 3</u>.        The claim of WELLS FARGO HOME MORTGAGE, to the extent allowed as a secured claim under § 506 of the Code.

3.4    <u>Class 4</u>.        The claim of CARRINGTON MORTGAGE, to the extent allowed as a secured claim under § 506 of the Code.

3.5    <u>Class 5</u>.        The claim of GREATER NEVADA CREDIT UNION, to the extent allowed as a secured claim under § 506 of the Code.

3.6    <u>Class 6</u>.        The claim of LINDA BARRETT, to the extent allowed as a secured claim under § 506 of the Code.

3.7    <u>Class 7</u>.        The claim of WASHOE COUNTY TREASURER, to the extent allowed as a secured claim under § 506 of the Code.

3.8    <u>Class 8</u>.        The claim of INTERNAL REVENUE SERVICE, to the extent allowed as a priority unsecured claim under § 507 of the Code.

3.9    <u>Class 9</u>.        All general unsecured claims allowed under § 502 of the Code.

3.10    <u>Class 10</u>.        The interests of the individual Debtor in property of the estate.

**4.    TREATMENT OF CLAIMS AND INTERESTS.**

**4.1    Class 1 (PRIORITY CLAIMS)**

Each holder of a Class 1 Priority Claim will be paid in full from the Debtor' Disposable Monthly Income.  The Allowed Class 1 Priority Claims shall receive monthly disbursements of the Debtor' Disposable Monthly Income, commencing on the later of the fifth (5th) day of the first (1st) month following the Effective Date of the Plan, until each Class 1 claim is paid in full without interest. Debtor believes that, except for attorney's fees, there will be no Class 1 Priority Claims against the Debtor at the time of confirmation.  Debtor estimates that their unpaid attorney's fees, through the confirmation hearing, will be approximately $20,000.00.

**4.2    Class 2 (CITY NATIONAL BANK)**

The Class 2 claim is **impaired** by this Plan and shall be treated under the Plan as follows:

(A)    <u>Treatment of Allowed Class 2 Secured Claim</u>

The Allowed Class 2 Secured Claim shall be paid in full on or before March 5, 2021.  In the interim, the Class 2 claim shall bear interest at the rate of 5.0% per annum.  Debtor shall make monthly principal and interest payments to the Class 2 claimholder on its Class 2 claim based on a twenty five

(25) year amortization schedule. Those monthly payments shall be in the amount of $2,630.56 and shall commence on fifth (5th) day of the first (1st) month following the Effective Date, and continue on the fifth (5th) day of each month thereafter until the Allowed Class 2 Secured Claim is paid in full.

The entire then outstanding principal balance of the Allowed Class 2 Secured Claim, together with any and all accrued interest, fees and costs due thereunder shall be due and payable in full on or before December 31, 2018. There will be no prepayment penalty. The Allowed Class 2 Secured Claim shall retain its lien until paid in full.

(B)    Treatment of Allowed Class 2 Unsecured Claim

The Allowed Class 2 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

(C)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 2 Secured Claim and the related deed of trust (the "Class 2 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(D)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 2 claimholder shall be entitled to enforce all of the terms of the Class 2 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 2 Secured Claim at any foreclosure sale.

### 4.3    Class 3 (WELLS FARGO HOME MORTGAGE)

The Class 3 Claim of Wells Fargo is **impaired** shall be treated under the Plan as follows:

(A)    Treatment of Allowed Class 3 Secured Claim

The Allowed Class 3 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 3 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of three hundred and sixty (360) months and shall bear interest

at the rate of four percent (4%) per annum, which produces monthly principal and interest payments in the amount of $1,909.66, plus the required escrow payment for taxes and insurance, currently $485.19, for a total monthly payment of $2,394.85.  Debtor may pay the outstanding balance of the Allowed Class 3 Secured Claim at any time prior to the expiration of the 360-month term without pre-payment penalty.

(B)    Treatment of Allowed Class 3 Unsecured Claim

The Allowed Class 3 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

(C)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 3 Secured Claim and the related deed of trust (the "Class 3 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(D)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 3 claimholder shall be entitled to enforce all of the terms of the Class 3 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 3 Secured Claim at any foreclosure sale.

**4.4    Class 4 (CARRINGTON MORTGAGE)**

The Class 4 Claim of Carrington Mortgage is **impaired** and shall be treated under the Plan as follows:

(A)    Treatment of Allowed Class 4 Secured Claim

The Allowed Class 4 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 4 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of three hundred and sixty (360) months and shall bear interest at the rate of four and one-half percent (4.5%) per annum, which produces monthly principal and

interest payments in the amount of $253.34, plus the required escrow payment for taxes and insurance. Debtor may pay the outstanding balance of the Allowed Class 4 Secured Claim at any time prior to the expiration of the 360-month term without pre-payment penalty.

(B)    Treatment of Allowed Class 4 Unsecured Claim

The Allowed Class 4 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

(C)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 4 Secured Claim and the related deed of trust (the "Class 4 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(D)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 4 claimholder shall be entitled to enforce all of the terms of the Class 4 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 4 Secured Claim at any foreclosure sale.

**4.5    Class 5 (GREATER NEVADA CREDIT UNION)**

The Class 5 Claim of Greater Nevada Credit Union is **impaired** and shall be treated under the Plan as follows:

(A)    Treatment of Allowed Class 5 Secured Claim

The Allowed Class 5 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 5 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of sixty (60) months and shall bear interest at the rate of four percent (4.0%) per annum, which produces monthly principal and interest payments in the amount of $294.66. Debtor may pay the outstanding balance of the Allowed Class 5 Secured Claim at any time prior to the expiration of the 60-month term without pre-payment penalty.

(B)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 5 Secured Claim and the related deed of trust (the "Class 5 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(C)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 5 claimholder shall be entitled to enforce all of the terms of the Class 5 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, repossession of its collateral and the opportunity to credit bid the entire amount the Allowed Class 5 Secured Claim at any foreclosure sale.

**4.6    Class 6 (LINDA BARRETT)**

The Class 6 claim of LINDA BARRETT is **impaired** and shall be treated under the Plan as follows:

(A)    Treatment of Allowed Class 6 Secured Claim

The Allowed Class 6 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 6 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of thirty-sixty (36) months and shall bear interest at the rate of four percent (4.0%) per annum, which produces monthly principal and interest payments in the amount of $236.19. Debtor may pay the outstanding balance of the Allowed Class 6 Secured Claim at any time prior to the expiration of the 36-month term without pre-payment penalty.

(B)    Treatment of Allowed Class 4 Unsecured Claim

The Allowed Class 4 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

(C)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 4 Secured Claim and the related deed of trust (the "Class 4 Loan Documents") shall remain in full force and effect, except as modified

by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

        (D)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor' counsel, the Class 4 claimholder shall be entitled to enforce all of the terms of the Class 4 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 4 Secured Claim at any foreclosure sale.

**4.7**    **Class 7 (WASHOE COUNTY TREASURER)**

The Allowed Class 7 Priority Unsecured Claim of the Washoe County treasurer is **impaired,** but will be paid in full from Debtor' Disposable Monthly Income.  The Allowed Class 9 Priority Claims shall monthly disbursements of the Debtor' Disposable Monthly Income, commencing the 5th day of the first month following the payment in full of all Class 1 Priority Claims, until the Class 9 claim is paid in full without interest.

**4.8**    **Class 8 (INTERNAL REVENUE SERVICE)**

The Allowed Class 8 Priority Unsecured Claim of the Internal Revenue Service will be paid in full on the Effective Date of this Plan.

**4.9**    **Class 9 (UNSECURED CREDITORS**)

The Allowed Class 9 Unsecured Creditors shall receive monthly disbursements of the Debtor' Disposable Monthly Income, commencing the 5th day of the first month following the payment in full of all Class 9 Priority Claims Unsecured Claims, and continuing until the conclusion of the Plan Term or until each Allowed Class 9 General Unsecured Claim is paid an amount equal to 5% of each claim, whichever occurs later.  It is estimated that this will require the Debtor to pay a minimum combined total of $94,977.00.

All portions of allowed Class 9 claims that remain unpaid at the conclusion of all required payments to Class 9 under this Plan shall be forever discharged and rendered non-collectable against the Debtors.

///

**4.10    Class 10 (THE DEBTOR)**

All estate property not sold or liquidated pursuant to this Plan shall revest in the Debtor on the Effective Date of this Plan.

**5.    TREATMENT OF UNCLASSIFIED CLAIMS AND INTERESTS; DISPUTED CLAIMS**

5.1    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

5.2    Administrative Expense Claims.  Except as otherwise provided herein, all administrative expense claimholders allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Art. VII).

5.3    Priority Tax Claims.  Except as otherwise provided in Section IV, below, each holder of a priority tax claim will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

5.4    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

5.5    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.6    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.7    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**6.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1    Assumed Executory Contracts and Unexpired Leases.

    (a)    The Debtor assumes the following executory contracts and/or unexpired leases

effective upon the date of the entry of the order confirming this Plan:

| Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| DENT DOCTOR, INC. | COMMERCIAL BUILDING LEASE |

(b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## 7.    MEANS OF IMPLEMENTING AND FUNDING THE PLAN

### 7.1    Funding The Plan

The payments to Class 1, Class 7 and Class 9 creditors required under the Plan will be funded by the Debtor' Disposable Monthly Income.  Commencing on the Effective Date, Debtor shall make quarterly distributions to Class 1, Class 7 and Class 9 claims, in accordance with the terms of this Plan, during the entire Plan Term, and beyond to the extent required by this Plan.  The combined total of each quarterly disbursement shall be no less than $5,000.00, but may be more depending on the profitability of Debtor's business operations.  Commencing on the Effective Date, Debtor shall make quarterly prorata distributions of Debtor' Disposable Monthly Income to Allowed Class 1 Priority Claims, and continuing on the fifth day of every third month thereafter until all Allowed Class 1 Priority Claims are paid in full without interest.  When the Allowed Class 1 Priority Unsecured Claims are fully satisfied, Debtor shall commence making quarterly payments to the Class 7 Priority Unsecured Creditor, until paid in full.  When the Allowed Class 7 Priority Unsecured Claims are fully satisfied, Debtor shall commence making quarterly payments to the Class 9 General Unsecured Creditors, until the completion of the Plan Term, or until each Allowed Class 9 Unsecured Claim receives 5% of its claim, whichever occurs later.

Payments to Class 2, Class 4, Class 5, Class 7 and Class 8 shall be funded from Debtor rental income from the ongoing operation of their rental business, and from employment.

Any prorated payment to creditors whose claims are not liquidated or disputed shall be paid into a segregated trust account maintained at the Darby Law Practice until such claims are an allowed

claim, in which event the proceeds shall be disbursed, or such claims shall be disallowed, in which case such sums shall be included in the next disbursement to creditors.

### 7.2    Revesting of Assets in the Debtor

Upon confirmation of the Plan, all property of the estate of the Debtor shall be revested in MICHAEL DECKER, pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

### 7.3    Disbursing Agent

The Reorganized Debtor will serve as disbursing agent and shall disburse all property to be distributed under the Plan. The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

### 7.4    Request for Application of 11 U.S.C. § 1129(b)

The Debtor, as Plan proponent, will request the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

### 7.5    Post-Confirmation Litigation

The Debtor does not anticipate any post-confirmation litigation, except for collection matters or evictions that occur in the normal course of the Debtor' business, and the determination of certain claims. The Debtor reserves the right to prosecute any objections to claims.

### 7.6    Post-Confirmation Default

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel at the following addresses:

| | |
|---|---|
| Kevin A. Darby, Esq. | Michael P. Decker |
| 4777 Caughlin Parkway | 3645 Falcon Way |
| Reno, Nevada 89519 | Reno, NV 89509 |

The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors may bring the matter before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for

the default and the ability of the Debtor to bring the payment(s) current in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Code or dismissal if the same is in the best interests of creditors.

**8.       FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

Pursuant to the Plan, funding will be accomplished from the Debtor' income from which the Debtor intends to pay all taxes associated with its post-confirmation earnings.  Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

**9.       INJUNCTION**

From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold or may hold a Claim are permanently enjoined from taking any of the following actions on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or their Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or their respective property; or (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

**10.      EXCULPATION**

From the Petition Date through the Effective Date, the Debtor and their agents and employees shall not have any liability to the Debtor or any other claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects, such persons will be entitled to rely on the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Case and the Plan.

**11.    MISCELLANEOUS PROVISIONS**

(A)    Any creditor who failed to file a proof of claim on or before any Court imposed claims bar date, shall be barred from participating in any distribution under the Plan, and the Debtor shall have no further liability for such claim.

(B)    Following the Effective Date, the Debtor may continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor without further order of the Court.

(C)    The estate shall be deemed to be fully administered upon the commencing of distributions to the Class 1 creditor.

(D)    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

(E)    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

(G)    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

(H) Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**12.    RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(A)    For the purpose specified in § 1142 of the Bankruptcy Code;

(B)    The consideration of claims and such objections as may be filed to the claims of creditors pursuant to § 502 of the Bankruptcy Code, and to file and prosecute any counterclaims against such creditors;

(C)    The fixing of compensation for the parties entitled thereto;

(D)    To hear and determine the amount of all encumbrances or the recovery of any preferences, transfers, assets or damages to which the Debtor' estate may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(E)    To reinstate the automatic stay pending a determination of the amount owed on any secured claim;

(F)    To hear and decide all causes of action now held by the Debtor, or disclosed in the Plan or Disclosure Statement;

(G)    To hear and decide all adversary proceedings or contested matters currently pending in the Bankruptcy Court, or which may be filed prior to or after plan confirmation;

(H)    To resolve any disputes regarding interpretation of the Plan;

(I)    To implement the provisions of the Plan, including all provisions in the Plan which specify the retention of jurisdiction, and to make such further orders as will aid in consummation of the Plan, including the sale of any property after Plan confirmation;

(J)    To adjudicate controversies regarding property of the Debtor' estate and regarding ownership thereof, including adjudication of causes of action which constitute property of the estate;

(K)    To modify this Plan in accordance with § 1127 of the Bankruptcy Code;

(L)    To enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; and

(M)    Enter a final decree and order closing the case.

**13.    MODIFICATION OF PLAN**

The Debtor may modify the Plan with regard to the treatment of any creditor class, in connection with any agreement or settlement with such creditor class or in order to comply with requirements of the Code as established by the Court, provided such modification does not materially adversely affect any other class of creditors. Such modifications may be reflected in the order confirming the Plan of Reorganization. Any other modification of the Plan shall be in accordance with § 1127 of the Code.

**14.    DISCHARGE**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court

1  grants a discharge on completion of all payments to unsecured creditors under this Plan, or as otherwise

2  provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from

3  discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of

4  Bankruptcy Procedure.

5        DATED this 25th day of February, 2011.

6                                              DARBY LAW PRACTICE, LTD.
                                                  /s/ Kevin A. Darby
7                                              By:_____

8                                                 KEVIN A. DARBY, ESQ. (#7670)
                                                  TRICIA M. DARBY, ESQ. (#7956)
9                                                 DARBY LAW PRACTICE, LTD.
                                                  4777 Caughlin Parkway
10                                                Reno, Nevada  89519

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT 2**

**EXHIBIT 2**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

In re:  MICHAEL DECKER

**Case No.**  BK-N-10-54972-gwz

**CHAPTER 11**
**MONTHLY OPERATING REPORT**
**(SMALL REAL ESTATE/INDIVIDUAL CASE)**

## SUMMARY OF FINANCIAL STATUS

**MONTH ENDED:**  01/31/11     **PETITION DATE:**  12/24/10

1.  Debtor in possession (or trustee) hereby submits this Monthly Operating Report on the Accrual Basis of accounting (or if checked here ___ the Office of the U.S. Trustee or the Court has approved the Cash Basis of Accounting for the Debtor).
    Dollars reported in  $1

| | End of Current Month | End of Prior Month | As of Petition Filing |
|---|---|---|---|
| 2. **Asset and Liability Structure** | | | |
| a. Current Assets | $1,733 | $1,335 | |
| b. Total Assets | $996,703 | $994,185 | $994,970 |
| c. Current Liabilities | $2,854,420 | $2,854,420 | |
| d. Total Liabilities | $2,854,420 | $2,854,420 | $2,854,420 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 3. **Statement of Cash Receipts & Disbursements for Month** | | | |
| a. Total Receipts | $4,405 | $0 | $4,405 |
| b. Total Disbursements | $4,008 | $253 | $4,261 |
| c. Excess (Deficiency) of Receipts Over Disbursements (a - b) | $398 | ($253) | $144 |
| d. Cash Balance Beginning of Month | $1,335 | $1,588 | $1,588 |
| e. Cash Balance End of Month (c + d) | $1,733 | $1,335 | $1,732 |

| | Current Month | Prior Month | Cumulative (Case to Date) |
|---|---|---|---|
| 4. **Profit/(Loss) from the Statement of Operations** | N/A | N/A | N/A |
| 5. **Account Receivables (Pre and Post Petition)** | $0 | | |
| 6. **Post-Petition Liabilities** | $0 | | |
| 7. **Past Due Post-Petition Account Payables (over 30 days)** | $0 | | |

| At the end of this reporting month: | | Yes | No |
|---|---|---|---|
| 8. | Have any payments been made on pre-petition debt, other than payments in the normal course to secured creditors or lessors? (if yes, attach listing including date of payment, amount of payment and name of payee) | | X |
| 9. | Have any payments been made to professionals?  (if yes, attach listing including date of payment, amount of payment and name of payee) | X | |
| 10. | If the answer is yes to 8 or 9, were all such payments approved by the court? | | |
| 11. | Have any payments been made to officers, insiders, shareholders, relatives?  (if yes, attach listing including date of payment, amount and reason for payment, and name of payee) | | X |
| 12. | Is the estate insured for replacement cost of assets and for general liability? | | |
| 13. | Are a plan and disclosure statement on file? | | |
| 14. | Was there any post-petition borrowing during this reporting period? | | |

15.  Check if paid: Post-petition taxes  ___ ;     U.S. Trustee Quarterly Fees  X  ; Check if filing is current for: Post-petition
    tax reporting and tax returns:  ___ .
    (Attach explanation, if post-petition taxes or U.S. Trustee Quarterly Fees are not paid current or if post-petition tax reporting and tax return filings are not current.)

I declare under penalty of perjury I have reviewed the above summary and attached financial statements, and after making reasonable inquiry believe these documents are correct.

Date:  2-16-11

_____
Responsible Individual

Revised 1/1/98

BALANCE SHEET
(Small Real Estate/Individual Case)
**For the Month Ended**   01/31/11

| | Assets | Check if Exemption Claimed on Schedule C | Market Value |
|---|---|---|---|
| | **Current Assets** | | |
| 1 | Cash and cash equivalents (including bank accts., CDs, ets.) | 75% | $1,733 |
| 2 | Accounts receivable (net) | | |
| 3 | Retainer(s) paid to professionals | | |
| 4 | Other: _____ | | |
| 5 | _____ | | |
| 6 | **Total Current Assets** | | $1,733 |
| | **Long Term Assets (Market Value)** | | |
| 7 | Real Property (residential) | X | $404,500 |
| 8 | Real property (rental or commercial) | | $530,000 |
| 9 | Furniture, Fixtures, and Equipment | $ 6,300.00 | $6,850 |
| 10 | Vehicles | $1,000.00 | $37,000 |
| 11 | Partnership interests | | |
| 12 | Interest in corportations | | |
| 13 | Stocks and bonds | | $7,500 |
| 14 | Interests in IRA, Keogh, other retirement plans | X | $7,000 |
| 15 | Other: _____ | | |
| 16 | _____ | | |
| 17 | **Total Long Term Assets** | | $992,850 |
| 18 | **Total Assets** | | $994,583 |
| | **Liabilities** | | |
| | **Post-Petition Liabilities** | | |
| | **Current Liabilities** | | |
| 19 | Post-petition not delinquent (under 30 days) | | |
| 20 | Post-petition delinquent other than taxes (over 30 days) | | |
| 21 | Post-petition delinquent taxes | | |
| 22 | Accrued professional fees | | |
| 23 | Other: _____ | | |
| 24 | _____ | | |
| 25 | **Total Current Liabilities** | | $0 |
| 26 | **Long-Term Post Petition Debt** | | |
| 27 | **Total Post-Petition Liabilities** | | $0 |
| | **Pre-Petition Liabilities (allowed amount)** | | |
| 28 | Secured claims (residence) | | |
| 29 | Secured claims (other) | | $2,706,266 |
| 30 | Priority unsecured claims | | |
| 31 | General unsecured claims | | $148,154 |
| 32 | **Total Pre-Petition Liabilities** | | $2,854,420 |
| 33 | **Total Liabilities** | | $2,854,420 |
| | **Equity (Deficit)** | | |
| 34 | **Total Equity (Deficit)** | | |
| 35 | **Total Liabilities and Equity (Deficit)** | | $2,854,420 |

NOTE:
   Indicate the method used to estimate the market value of assets (e.g., appraisals; familiarity with comparable market prices, etc.) and the date the value
   was determined.

# SCHEDULES TO THE BALANCE SHEET

### Schedule A
### Rental Income Information

**List the Rental Information Requested Below By Properties (For Rental Properties Only)**

|  |  | __Property 1__ | __Property 2__ | __Property 3__ |
|---|---|---|---|---|
|  |  | Residential, 1612 Keystone Ave, Reno, NV 89503 | Commercial, 3215 Mill Street, Reno, NV 89520 |  |
| 1 | **Description of Property** |  |  |  |
| 2 | **Scheduled Gross Rents** |  | $4,500 |  |
|  | **Less:** |  |  |  |
| 3 | Vacancy Factor |  |  |  |
| 4 | Free Rent Incentives |  |  |  |
| 5 | Other Adjustments |  |  |  |
| 6 | **Total Deductions** | $0 | $0 | $0 |
| 7 | **Scheduled Net Rents** | $0 | $4,500 | $0 |
| 8 | **Less:  Rents Receivable (2)** |  |  |  |
| 9 | **Scheduled Net Rents Collected (2)** | $0 | $4,500 | $0 |

(2) To be completed by cash basis reporters only.

### Schedule B
### Recapitulation of Funds Held at End of Month

|  |  | __Account 1__ | __Account 2__ | __Account 3__ |
|---|---|---|---|---|
| 10 | **Bank** | Bank of America | City National | NV State Bank |
| 11 | **Account No.** | 360208870 | 368352284 | 400125183 |
| 12 | **Account Purpose** | Personal | Personal | Personal |
| 13 | **Balance, End of Month** | $857 | $22 | $456 |
| 14 | **Total Funds on Hand for all Accounts** | $1,335 |  |  |

Attach copies of the month end bank statement(s), reconciliation(s), and the check register(s) to the Monthly Operating Report.

Revised 1/1/98

## STATEMENT OF CASH RECEIPTS AND DISBURSEMENTS

### Increase/(Decrease) in Cash and Cash Equivalents

### For the Month Ended    01/31/11

| | | Actual<br>Current Month | Cumulative<br>(Case to Date) |
|---|---|---|---|
| | **Cash Receipts** | | |
| 1 | Rent/Leases Collected | | |
| 2 | Cash Received from Sales | $52,366 | $62,377 |
| 3 | Interest Received | | |
| 4 | Borrowings | | |
| 5 | Funds from Shareholders, Partners, or Other Insiders | | |
| 6 | Capital Contributions | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | **Total Cash Receipts** | $52,366 | $62,377 |
| | **Cash Disbursements** | | |
| 13 | Selling | $14,650 | $20,042 |
| 14 | Administrative | $2,735 | $3,739 |
| 15 | Capital Expenditures | | |
| 16 | Principal Payments on Debt | | |
| 17 | Interest Paid | $918 | $1,207 |
| | Rent/Lease: | | |
| 18 | Personal Property | | |
| 19 | Real Property | $4,500 | $4,500 |
| | Amount Paid to Owner(s)/Officer(s) | | |
| 20 | Salaries | $2,000 | $2,500 |
| 21 | Draws | | |
| 22 | Commissions/Royalties | | |
| 23 | Expense Reimbursements | | |
| 24 | Other | | |
| 25 | Salaries/Commissions (less employee withholding) | $13,109 | $15,323 |
| 26 | Management Fees | | |
| | Taxes: | | |
| 27 | Employee Withholding | $2,153 | $2,536 |
| 28 | Employer Payroll Taxes | $2,347 | $2,674 |
| 29 | Real Property Taxes | $923 | $923 |
| 30 | Other Taxes | $240 | $240 |
| 31 | Other Cash Outflows: | $464 | $894 |
| 32 | Auto Expense | $137 | $764 |
| 33 | Repairs & Maintenance | $191 | $1,640 |
| 34 | Utilities | $3,102 | $3,102 |
| 35 | Insurance | $1,710 | $1,710 |
| 36 | | | |
| 37 | **Total Cash Disbursements:** | $49,179 | $61,794 |
| 38 | **Net Increase (Decrease) in Cash** | $3,187 | $583 |
| 39 | **Cash Balance, Beginning of Period** | | |
| 40 | **Cash Balance, End of Period** | $3,187 | $583 |

Revised 1/1/98

# NEVADA STATE BANK

**THE DOOR TO YOUR FUTURE**

P.O. Box 990 · Las Vegas, NV 89125-0990 | www.nsbank.com

**Statement of Accounts**
Page 1 of 4
This Statement: February 8, 2011
Last Statement: January 10, 2011

Primary Account 400125183

0001842                2240-06-0000-NSB-PG0021-00000

MICHAEL P DECKER
3645 FALCON WAY
RENO NV 89509-5612

**DIRECT INQUIRIES TO:**
Reddl Response
24-hour Account Information:
Las Vegas:      471-5800
Reno:            337-2811
1 (800) 462-3555 (outside local areas)

Loan By Phone
Las Vegas:      399-Loan (5626)
Reno:            851-8811
1 (800) 789-4671 (outside local areas)

## SUMMARY OF ACCOUNT BALANCE

| Account Type | Account Number | Checking/Savings Ending Balance | Outstanding Balances Owed |
|---|---|---|---|
| Free Checking | 400125183 | $32.86 | |

## FREE CHECKING 400125183                                              657    0

| Previous Balance | Deposits/Credits | Charges/Debits | Checks Processed | Ending Balance |
|---|---|---|---|---|
| 2,503.48 | 1,971.75 | 3,999.40 | 442.97 | 32.86 |

### 1 DEPOSIT/CREDIT

| Date | Amount | Description |
|---|---|---|
| 01/14 | 1,971.75 | DEPOSIT 9494628463 |

### 13 CHARGES/DEBITS

| Date | Amount | Description |
|---|---|---|
| 01/13 | 717.75 | 24493980D61HE9Z87 TMCC-CONTROLLERS OFFICE 775-673-7156 NV 1200819468 |
| 01/13 | 41.76 | 24071050QWPARDPF4 WEDDLE INDUSTRIES 805-5628600 CA 1200819467 |
| 01/18 | 50.68 | 24122470GS66KFABG SKYLINE MARKET RENO NV 1200744952 |
| 01/18 | 43.88 | 24046030G00591B6P CHEVRON 00351917 VERDI NV 1200744951 |
| 01/25 | 731.83 | P.O.S. PURCHASE MACCABEE A 2295 KIETZK RENO NV 1400414100  |
| 01/25 | 339.33 | P.O.S. PURCHASE MACCABEE A 2295 KIETZK RENO NV 1400414099 |
| 01/25 | 231.60 | 24323010RGLPLKD90 BATTERY SYSTEMS 53 SPARKS NV 1200719014 |
| 01/27 | 52.92 | P.O.S. PURCHASE ARCO PAYPO 205 NORTH M SPARKS NV 1400515513 |
| 01/31 | 1,032.83 | P.O.S. PURCHASE MACCABEE A 2295 KIETZK RENO NV 1400650839 |
| 01/31 | 253.15 | P.O.S. PURCHASE MACCABEE A 2295 KIETZK RENO NV 1400650838 |
| 02/04 | 428.42 | SIERRA PACIFIC P CHECKP 1008 REF # 011034008984711 1100827448 |
| 02/07 | 56.25 | P.O.S. PURCHASE 7-ELEVEN 10170 N MCC RENO NV 1400652082 |
| 02/07 | 19.00 | 2476197137AFK5LBL CENTURY 16 #425 Q75 RENO NV 1200766140 |

### 3 CHECKS PROCESSED

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|---|---|---|---|---|---|---|---|---|
| 1005 | 01/26 | 27.07 | 1006 | 02/04 | 325.00 | 1007 | 02/07 | 90.90 |

### AGGREGATE OVERDRAFT AND RETURNED ITEM FEES

| | Total for This Period | Total Year-to-Date |
|---|---|---|
| Total Overdraft Fees | $0.00 | $0.00 |
| Total Returned Item Fees | $0.00 | $0.00 |

MEMBER FDIC

0001842-0000001-0002958



THE DOOR TO YOUR FUTURE

P.O. Box 990 · Las Vegas, NV 89125-0990  |  www.nsbank.com

Page 3 of 4
February 8, 2011
MICHAEL P DECKER
400125183

**DAILY BALANCES**

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 01/13 | 1,743.97 | 01/25 | 2,318.40 | 01/31 | 952.43 |
| 01/14 | 3,715.72 | 01/26 | 2,291.33 | 02/04 | 199.01 |
| 01/18 | 3,621.16 | 01/27 | 2,238.41 | 02/07 | 32.86 |

EQUAL HOUSING
LENDER    MEMBER FDIC



# **Bank of America**

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118



**Combined Statement**
Page 1 of 3          000360208870
Statement Period
12-30-10 through 01-27-11
B  18  0  A  P  PA  18
Number of checks enclosed: 0

MD 02/03 0  0336 167 1      610 004964 #@01 AV 0.335

**MICHAEL P DECKER**
**3645 FALCON WAY**
**RENO NV 89509-5612**

Our Online Banking service allows you to check balances, track account activity and more.
**With Online Banking you can also view up to 18 months of this statement**
**online and even turn off delivery of your paper statement.**
Enroll at www.bankofamerica.com.

## **Customer Service Information**
## **www.bankofamerica.com**

☎ For additional information or service, you may call:
1.800.432.1000 Customer Service
1.800.288.4408 TDD/TTY Users Only
1.800.688.6086 En Español

✉ Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## **Your Statement Summary**

| Account Name | Account Number | Statement Date | Balance ($) |
|---|---|---|---|
| **Bank Deposit Accounts \*\*** | | | |
| MyAccess Checking | 0003 6020 8870 | 01-27 | 758.40 |

**Total Deposit Account Balance $758.40**

\*\* Banking products such as checking and savings accounts are offered by Bank of America, N.A., member FDIC. Bank of America credit cards are issued and administered by FIA Card Services, N.A.

At Bank of America, if fraud occurs on your debit or credit card, charges will be credited to your account as soon as the next business day pending resolution of claim. To be covered, report fraud charges promptly. Don't share personal or account information. See account agreements or visit www.bankofamerica.com/solutions for details.

♻ Recycled Paper



# Bank of America 

Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

**Combined Statement**
Page 1 of 3            000360208870
Statement Period
12-30-10 through 01-27-11
B  18  0  A P  PA  18
Number of checks enclosed: 0

MD 02/03 0  0336 167 1    610 004964 #@01 AV 0.335

**MICHAEL P DECKER**
**3645 FALCON WAY**
**RENO NV 89509-5612**

Our Online Banking service allows you to check balances, track account activity and more.
**With Online Banking you can also view up to 18 months of this statement**
**online and even turn off delivery of your paper statement.**
Enroll at www.bankofamerica.com.

## Customer Service Information
## www.bankofamerica.com

For additional information or service, you may call:
1.800.432.1000 Customer Service
1.800.288.4408 TDD/TTY Users Only
1.800.688.6086 En Español

Or you may write to:
Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

## Your Statement Summary

| Account Name | Account Number | Statement Date | Balance ($) |
|---|---|---|---|
| **Bank Deposit Accounts \*\*** | | | |
| MyAccess Checking | 0003 6020 8870 | 01-27 | 758.40 |

**Total Deposit Account Balance $758.40**

\*\* Banking products such as checking and savings accounts are offered by Bank of America, N.A., member FDIC. Bank of America credit cards
are issued and administered by FIA Card Services, N.A.

At Bank of America, if fraud occurs on your debit or credit card, charges will be credited to your account
as soon as the next business day pending resolution of claim. To be covered, report fraud charges
promptly. Don't share personal or account information. See account agreements or visit
www.bankofamerica.com/solutions for details.

Recycled Par

11:39 AM

02/11/11

Cash Basis

# Dent Doctor, Inc.
# Profit & Loss
### January 2011

|  | Jan 11 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| 4000 · Sales - Parts | 10,731.99 |
| 4010 · Sales - Body/Frame/Mech Labor | 15,037.31 |
| 4020 · Sales - Paint Labor | 13,130.79 |
| 4050 · Sales - PDR | 5,838.00 |
| 4070 · Sales - Paint Materials | 6,666.71 |
| 4080 · Sales - Sublet | 786.26 |
| 4200 · Sales - Miscellaneous | 175.40 |
| **Total Income** | 52,366.46 |
| **Cost of Goods Sold** | |
| Discounts | -16.99 |
| 5000 · COS - Parts | 8,955.90 |
| 5010 · COS - Body/Frame/Mech Labor | 5,309.00 |
| 5020 · COS - Paint Labor | 3,327.04 |
| 5030 · COS - Glass Labor | 236.00 |
| 5040 · COS - Detail Labor | 2,070.00 |
| 5050 · COS - PDR Labor | 1,920.00 |
| 5055 · COS - Shop Labor | 2,400.00 |
| 5070 · COS - Paint Materials | 5,453.73 |
| 5100 · COS - Shop Supplies | 321.02 |
| 5900 · Customer Discounts / Refunds | -63.49 |
| **Total COGS** | 29,912.21 |
| **Gross Profit** | 22,454.25 |
| **Expense** | |
| 6000 · Accounting | 758.04 |
| 6020 · Advertisement & Promotion | 695.00 |
| 6040 · Automobile Expense | |
| 6041 · Fuel | 91.84 |
| 6042 · Maintenance & Repairs | 44.95 |
| **Total 6040 · Automobile Expense** | 136.79 |
| 6060 · Bank Service Charges | 58.31 |
| 60960 · Sales Tax | 239.75 |
| 6100 · Credit Card Processing Fees | 478.73 |
| 6160 · Dues & Subscriptions | 200.00 |
| 6180 · Equipment Rental | 294.31 |
| 6220 · Insurance - Liability | 1,709.60 |
| 6260 · Interest | 918.30 |
| 6320 · Miscellaneous | 0.00 |
| 6340 · Office Expense / Supplies | 450.87 |
| 6380 · Payroll Tax Expense | 2,347.37 |
| 6420 · Rent | 4,500.00 |
| 6440 · Repairs & Maint - Building | 150.00 |
| 6460 · Repair & Maint - Office Equip. | 9.88 |
| 6480 · Repair & Maint - Shop Equip. | 31.24 |
| 6500 · Salary - Officer | 2,000.00 |
| 65000 · Operations | |
| 65040 · Supplies | 263.61 |
| **Total 65000 · Operations** | 263.61 |
| 6560 · Taxes & Licenses | 923.20 |
| 6580 · Telephone/Internet/Comm | 907.55 |

11:39 AM

02/11/11

Cash Basis

# Dent Doctor, Inc.
# Profit & Loss
### January 2011

|  | Jan 11 |
|---|---|
| **6600 · Utilities** | |
| 6601 · Electric & Gas | 2,150.44 |
| 6604 · Waste Removal | 44.16 |
| **Total 6600 · Utilities** | 2,194.60 |
| **Total Expense** | 19,267.15 |
| **Net Ordinary Income** | 3,187.10 |
| **Net Income** | 3,187.10 |