KEVIN A. DARBY, ESQ. (#7670)
TRICIA M. DARBY, ESQ. (#7956)          *E-filed: April 18, 2011*
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada  89519
Tel.     775.322.1237
Fax      775.996.7290
kevin@darbylawpractice.com

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:                                    CASE NO. :  BK-N-10-54972-gwz

MICHAEL DECKER,                           Chapter 11

                    Debtor.

_____/

# FIRST AMENDED

# CHAPTER 11 PLAN OF REORGANIZATION

# FOR

# MICHAEL DECKER

1

**TABLE OF CONTENTS**

2  1.  **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

3  2.  **DEFINITIONS**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

4  3.  **CLAIMS AND INTERESTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5  4.  **TREATMENT OF CLAIMS AND INTERESTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6      4.1   Class 1 (Priority Claims) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

7      4.2   Class 2 (City National Bank) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

8      4.3   Class 3 (Wells Fargo Home Mortgage) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

9      4.4   Class 4 (Carrington Mortgage Services) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

10     4.5   Class 5 (Greater Nevada Credit Union) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11     4.6   Class 6 (Linda Barrett) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

12     4.7   Class 7 (Washoe County Treasurer) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

13     4.8   Class 8 (Internal Revenue Service) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

14     4.9   Class 9 (Unsecured Creditors) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

15     4.10  Class 10 (The Debtor) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

16 5.  **TREATMENT OF UNCLASSIFIED CLAIMS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17     5.1   Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18     5.2   Administrative Expense Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19     5.3   Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

20     5.4   United States Trustee Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

21     5.5   Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

22     5.6   Delay of Distribution on a Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

23     5.7   Settlement of Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

24 6.  **EXECUTORY CONTRACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

25 7.  **MEANS OF IMPLEMENTING AND FUNDING THE PLAN** . . . . . . . . . . . . . . . . . . . 16

26     7.1   Funding The Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

27     7.2   Revesting of Assets in the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

28     7.3   Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7.4    Request for Application of 11 U.S.C. § 1129(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

7.5    Post-Confirmation Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

7.6    Post-Confirmation Default. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

8.    **FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN** . . . . . . . . . . . . . . . . . . . .17

9.    **INJUNCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10.    **EXCULPATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11.    **MISCELLANEOUS PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

12    **RETENTION OF JURISDICTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

13.    **MODIFICATION OF PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

14.    **DISCHARGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

## 1.    INTRODUCTION

This First Amended Plan of Reorganization (the "Plan") under chapter 11 of the United States Bankruptcy Code proposes to pay creditors of MICHAEL DECKER from net cash flow from future income from the operation of his business.

This Plan provides for five (5) classes of secured claims, two (2) classes of priority unsecured claims, and one (1) class of general unsecured claims.  This Plan also provides for the payment of administrative and priority claims.  Unsecured creditors holding allowed claims will receive distributions, which will total at least ten cents on the dollar ($0.10).  Debtor estimates this will require total combined payments to unsecured creditors of $175,000.00.  Debtor estimates that in a chapter 7 liquidation bankruptcy case, creditors would receive a total combined distribution of $0.00 or approximately zero cents on the dollar ($0.00).  Thus, this Plan provides unsecured creditors substantially more than they would receive in a liquidation case.

All creditors should refer to Sections 3-6 of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.**

## 2.    DEFINITIONS

Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter. Any capitalized term not defined herein that is defined in the Bankruptcy Code shall have the meaning ascribed to it in the Bankruptcy Code.  Unless the context requires otherwise, the following words and phrases shall have the meanings set forth below when used in this Plan:

(a)    "**Administrative Claims.**"  Claims arising during the administration Debtor's Chapter 11 case entitled to priority under Section 507(a)(1) of the Bankruptcy Code. As required by the Bankruptcy Code, holders of such Allowed Administrative Claims against Debtor shall receive cash in the amount of such allowed claim on the Effective Date.

(b)    "**Allowed Claim.**"  This term will refer to and mean every claim: (i) as to which a proof of claim has been filed with the Court within the time fixed by the Court or, if such claim arises from the Debtor's rejection of an unexpired lease or other executory contract, within thirty (30) days after the Effective Date of the Plan, or (ii) which is scheduled as of the Confirmation Date of the Plan in the schedules filed by the Debtor or amended by the Debtor as of said date, and is liquidated in amount and undisputed; and in either of the above events, as to which no objection to allowance of such claim or request for subordination thereof has been filed within any applicable time period fixed by the Court or as to which an order allowing such claim and establishing its priority has become final and non-appealable.  An allowed secured claim shall include all accrued interest and attorneys fees, to the extent the same are allowable under 11 U.S.C. § 506, and to the extent attorneys fees are reasonable or are approved by the Bankruptcy Court after notice and hearing.

(c)    "**Allowed Class 2 Secured Claim**"  This term shall mean the allowed secured portion of the claim of City National Bank, in accordance with 11 U.S.C. §506, which shall be in the amount of $638,000.00, or such other amount that is established to be the value of City National Bank's secured interest in 3215 Mill Street, Reno, NV.

(d)    "**Allowed Class 2 Unsecured Claim**"  This term shall mean the allowed unsecured portion of the claim of City National Bank, in accordance with 11 U.S.C. §506, which shall be in the amount of $1,486,677.15

(e)    "**Allowed Class 3 Secured Claim**"  This term shall mean the allowed secured portion of the claim of Wells Fargo Home Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $400,000.00, or such other amount that is established to be the value of Welss Fargo Home Mortgage's secured interest in 3465 Falcon Way, Reno, NV.

(f)    "**Allowed Class 3 Unsecured Claim**"  This term shall mean the allowed unsecured portion of the claim of Wells Fargo Home Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $99,135.00.

(g)    "**Allowed Class 4 Secured Claim**"  This term shall mean the allowed secured portion of the claim of Carrington Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $50,000.00, and is secured by a first priority deed of trust against 1612 Keystone Avenue,

Reno, NV.

(h) **"Allowed Class 4 Unsecured Claim"**   This term shall mean the allowed unsecured portion of the claim of Carrington Mortgage, in accordance with 11 U.S.C. §506, which shall be in the amount of $210,571.00.

(i) **"Allowed Class 5 Secured Claim"**   This term shall mean the allowed secured portion of the claim of Greater Nevada Credit Union, in accordance with 11 U.S.C. §506, which shall be in the amount of $16,000.00, and is secured by a purchase money security interest in Debtor's 2006 Chevrolet 2500 pick-up truck.

(j) **"Allowed Class 6 Secured Claim"**   This term shall mean the allowed secured portion of the claim of Linda Barrett, in accordance with 11 U.S.C. §506, which shall be in the amount of $8,000.00, which is the value of Linda Barrett's secured interest in Debtor's 1988 Porsche Convertible.

(k) **"Allowed Class 6 Unsecured Claim"**   This term shall mean the allowed unsecured portion of the claim of Linda Barrett, in accordance with 11 U.S.C. §506, which shall be in the amount of $4,000.00.

(l) **"Allowed Class 7 Secured Claim"**   This term shall mean the allowed secured claim of the Washoe County Treasurer, in accordance with 11 U.S.C. §506, which shall be in the amount of $23,028.86.

(m) **"Allowed Class 8 Priority Unsecured Claim"**   This term shall mean the allowed unsecured claim of the Internal Revenue Service, in accordance with 11 U.S.C. §507, which shall be in the amount of $0.00.

(n) "**Bankruptcy Case.**"  This term shall mean the pending Chapter 11 case entitled Michael Decker, an individual, Case No. BK-N-10-54972-GWZ.

(o) "**Bankruptcy Code.**" or "**Code.**"  These terms mean the Bankruptcy Code of 1978, as codified in Title 11 of the United States Bankruptcy Code by Public Law 95-598, including all amendments thereof and thereto.

(p) "**Bankruptcy Court.**"  This term means the United States Bankruptcy Court for the District of Nevada, Reno, or such other court as has jurisdiction of these Chapter 11 cases.

(q)    **"Claim."**  This term means any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(r)    "**Confirmation Date.**"  This term refers to and shall mean the date on which the Court enters its Order confirming Debtor's Plan of Reorganization, or any subsequently amended plan of reorganization.

(s)    "**Confirmation Hearing**."  This term shall mean the hearing or hearings in which the Bankruptcy Court considers confirmation of the Plan.  The actual date of the hearing can be found on the Notice of Hearing, served herewith.

(t)    "**Debtor**."  The term Debtor means Michael Decker, the Chapter 11 Debtor in Case No. BK-N-10-54972-GWZ.

(u)    **Debtor's Current Monthly Income."**  This term means the income received by Debtor from all sources, which currently totals $16,000.00.

(u)    **"Debtor's Current Monthly Expenses."**  This term means: (1) amounts reasonably necessary to be expended for the maintenance support of the Debtor, or dependents of the Debtor; (2) charitable contributions as that term is defined under section 548(d)(3) of the Code; and (3) amounts reasonably necessary to be expended for the payment of the expenditures necessary for the continuation, preservation and operations of Debtor's rental and business activities, which currently totals $12,600.00.

(v)    **"Debtor's Disposable Monthly Income."**  This term shall mean Debtor's Current Monthly Income less Debtor's Current Monthly Expenses, which amount currently equals $2,400.00.

(w)    "**Disclosure Statement.**"  Disclosure Statement means this Disclosure Statement filed by the Debtor, as amended, and as approved by the Bankruptcy Court.

(x)    "**Effective Date.**"  This term shall mean the date which is the first day of the first

month at least thirty (30) days following the Confirmation Date.

(y) "**Notice of Hearing.**"  This term shall mean the *Notice Of Hearing For Final Approval Of Debtor's Disclosure Statement And Confirmation Of Chapter 11 Plan Of Reorganization* filed with the Court in this case, a copy of which is served with this Disclosure Statement.

(z) "**Petition Filing Date.**"  This term shall refer to December 24, 2010, the date on which Debtor filed his voluntary petition commencing the above-captioned Chapter 11 case.

(aa) "**Plan.**"  This term shall refer to Debtor's Plan of Reorganization, together with any amendments or modifications thereto as may hereafter be filed by the Debtor.

(bb) "**Plan Term.**"  This term shall mean a period of sixty (60) months beginning on the Effective Date.

(cc) "**Post Confirmation.**"  This term shall mean the period of time after the Confirmation Date.

(dd) "**Priority Claims.**"  This term shall refer to professional fees incurred by the Debtor in connection with this Case.  Debtor believes that, except for attorneys fees, there will be no Class 1 Priority Claims against the Debtor at the time of confirmation.  Debtor estimates that his unpaid attorney's fees, through the confirmation hearing, will be approximately $25,000.00.

(ee) "**Reorganized Debtor.**"  This term means Michael Decker following the Confirmation Date.

(ff) "**Scheduled Claim.**"  This means the total amount of a creditors pre-petition claim against the Debtor, as set forth in the Schedules to Debtor's Bankruptcy Petition.

(gg) "**Unsecured Claim.**"  This shall mean a Claim that is not secured by a pledge of or security interest in any of the Debtor's property.

**3.    CLAIMS AND INTERESTS**

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. Administrative Claims and Priority Claims of the kinds specified in Sections 507(a)(1) and 507(a)(8) of the Bankruptcy Code have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

3.1    <u>Class 1</u>.        All allowed claims entitled to priority under § 507 of the Code, including

professional fees for Debtor's Counsel in this case.

3.2    Class 2.    The claim of CITY NATIONAL BANK, to the extent allowed as a secured claim under § 506 of the Code.

3.3    Class 3.    The claim of WELLS FARGO HOME MORTGAGE, to the extent allowed as a secured claim under § 506 of the Code.

3.4    Class 4.    The claim of CARRINGTON MORTGAGE, to the extent allowed as a secured claim under § 506 of the Code.

3.5    Class 5.    The claim of GREATER NEVADA CREDIT UNION, to the extent allowed as a secured claim under § 506 of the Code.

3.6    Class 6.    The claim of LINDA BARRETT, to the extent allowed as a secured claim under § 506 of the Code.

3.7    Class 7.    The claim of WASHOE COUNTY TREASURER, to the extent allowed as a secured claim under § 506 of the Code.

3.8    Class 8.    The claim of INTERNAL REVENUE SERVICE, to the extent allowed as a priority unsecured claim under § 507 of the Code.

3.9    Class 9.    All general unsecured claims allowed under § 502 of the Code.

3.10    Class 10.    The interests of the individual Debtor in property of the estate.

## 4.    TREATMENT OF CLAIMS AND INTERESTS.

### 4.1    Class 1 (PRIORITY CLAIMS)

Each holder of a Class 1 Priority Claim will be paid in full from the Debtor's Disposable Monthly Income. The Allowed Class 1 Priority Claims shall receive monthly disbursements of the Debtor's Disposable Monthly Income, commencing on the later of the fifth (5th) day of the first (1st) month following the Effective Date of the Plan, until each Class 1 claim is paid in full without interest. Debtor believes that, except for attorney's fees, there will be no Class 1 Priority Claims against the Debtor at the time of confirmation. Debtor estimates that his unpaid attorney's fees, through the confirmation hearing, will be approximately $25,000.00.

### 4.2    Class 2 (CITY NATIONAL BANK)

The Class 2 claim is **impaired** by this Plan and shall be treated under the Plan as follows:

(A)    Treatment of Allowed Class 2 Secured Claim

The Allowed Class 2 Secured Claim shall be paid in full on or before March 5, 2021. In the interim, the Class 2 claim shall bear interest at the rate of 5.0% per annum. Debtor shall make monthly

principal and interest payments to the Class 2 claimholder on its Class 2 claim based on a twenty (20) year amortization schedule. Those monthly payments shall be in the amount of $4,210.52 and shall commence on fifth (5th) day of the first (1st) month following the Effective Date, and continue on the fifth (5th) day of each month thereafter until the Allowed Class 2 Secured Claim is paid in full.

The entire then outstanding principal balance of the Allowed Class 2 Secured Claim, together with any and all accrued interest, fees and costs due thereunder shall be due and payable in full on or before March 5, 2021. There will be no prepayment penalty. The Allowed Class 2 Secured Claim shall retain its lien until paid in full.

        (B)    <u>Treatment of Allowed Class 2 Unsecured Claim</u>

The Allowed Class 2 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

        (C)    <u>Loan Documents Remain In Limited Effect</u>

The terms of the promissory note underlying the Allowed Class 2 Secured Claim and the related deed of trust (the "Class 2 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

        (D)    <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 2 claimholder shall be entitled to enforce all of the terms of the Class 2 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 2 Secured Claim at any foreclosure sale.

### 4.3    Class 3 (WELLS FARGO HOME MORTGAGE)

The Class 3 Claim of Wells Fargo is **impaired** shall be treated under the Plan as follows:

        (A)    <u>Treatment of Allowed Class 3 Secured Claim</u>

The Allowed Class 3 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 3 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and

every month thereafter for a total period of three hundred and sixty (360) months and shall bear interest at the rate of four percent (4%) per annum, which produces monthly principal and interest payments in the amount of $1,909.66, plus the required escrow payment for taxes and insurance, currently $485.19, for a total monthly payment of $2,394.85. Debtor may pay the outstanding balance of the Allowed Class 3 Secured Claim at any time prior to the expiration of the 360-month term without pre-payment penalty.

(B)    Treatment of Allowed Class 3 Unsecured Claim

The Allowed Class 3 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

(C)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 3 Secured Claim and the related deed of trust (the "Class 3 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(D)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 3 claimholder shall be entitled to enforce all of the terms of the Class 3 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 3 Secured Claim at any foreclosure sale.

**4.4    Class 4 (CARRINGTON MORTGAGE)**

The Class 4 Claim of Carrington Mortgage is **impaired** and shall be treated under the Plan as follows:

(A)    Treatment of Allowed Class 4 Secured Claim

The Allowed Class 4 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 4 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of three hundred and sixty (360) months and shall bear interest

at the rate of four and one-half percent (4.5%) per annum, which produces monthly principal and interest payments in the amount of $253.34, plus the required escrow payment for taxes and insurance. Debtor may pay the outstanding balance of the Allowed Class 4 Secured Claim at any time prior to the expiration of the 360-month term without pre-payment penalty.

(B)    <u>Treatment of Allowed Class 4 Unsecured Claim</u>

The Allowed Class 4 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

(C)    <u>Loan Documents Remain In Limited Effect</u>

The terms of the promissory note underlying the Allowed Class 4 Secured Claim and the related deed of trust (the "Class 4 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(D)    <u>Plan Default</u>

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 4 claimholder shall be entitled to enforce all of the terms of the Class 4 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 4 Secured Claim at any foreclosure sale.

**4.5    Class 5 (GREATER NEVADA CREDIT UNION)**

The Class 5 Claim of Greater Nevada Credit Union is **impaired** and shall be treated under the Plan as follows:

(A)    <u>Treatment of Allowed Class 5 Secured Claim</u>

The Allowed Class 5 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 5 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of sixty (60) months and shall bear interest at the rate of four percent (4.0%) per annum, which produces monthly principal and interest payments in the amount of $294.66.  Debtor may pay the outstanding balance of the Allowed Class 5 Secured Claim at any time

prior to the expiration of the 60-month term without pre-payment penalty.

(B)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 5 Secured Claim and the related deed of trust (the "Class 5 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(C)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 5 claimholder shall be entitled to enforce all of the terms of the Class 5 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, repossession of its collateral and the opportunity to credit bid the entire amount the Allowed Class 5 Secured Claim at any foreclosure sale.

**4.6    Class 6 (LINDA BARRETT)**

The Class 6 claim of LINDA BARRETT is **impaired** and shall be treated under the Plan as follows:

(A)    Treatment of Allowed Class 6 Secured Claim

The Allowed Class 6 Secured Claim shall retain its lien and be paid in full by amortized monthly payments made directly to the Class 6 Creditor, commencing on the fifth (5th) day of the first (1st) month following the Effective Date of this Plan, and continuing on the fifth (5th) day of each and every month thereafter for a total period of thirty-sixty (36) months and shall bear interest at the rate of four percent (4.0%) per annum, which produces monthly principal and interest payments in the amount of $236.19.  Debtor may pay the outstanding balance of the Allowed Class 6 Secured Claim at any time prior to the expiration of the 36-month term without pre-payment penalty.

(B)    Treatment of Allowed Class 4 Unsecured Claim

The Allowed Class 4 Unsecured Claim shall be reclassified to Class 9 and treated as an unsecured creditor in accordance with this Plan.

(C)    Loan Documents Remain In Limited Effect

The terms of the promissory note underlying the Allowed Class 4 Secured Claim and the

related deed of trust (the "Class 4 Loan Documents") shall remain in full force and effect, except as modified by or otherwise inconsistent with this Plan, in which event the terms of this Plan shall supersede.

(D)    Plan Default

In the event of a default by the Debtor under the Plan, and in the event Debtor fail to cure such default within fifteen (15) business days after delivery of notice to the Debtor and to Debtor's counsel, the Class 4 claimholder shall be entitled to enforce all of the terms of the Class 4 Loan Documents, in additional to all rights available under Nevada law, including, without limitation, foreclosure its collateral and the opportunity to credit bid the entire amount the Allowed Class 4 Secured Claim at any foreclosure sale.

**4.7    Class 7 (WASHOE COUNTY TREASURER)**

The Allowed Class 7 Priority Unsecured Claim of the Washoe County treasurer is **impaired,** but will be paid in full from Debtor's Disposable Monthly Income.  The Allowed Class 9 Priority Claims shall monthly disbursements of the Debtor's Disposable Monthly Income, commencing the 5th day of the first month following the payment in full of all Class 1 Priority Claims, until the Class 9 claim is paid in full without interest.

**4.8    Class 8 (INTERNAL REVENUE SERVICE)**

The Allowed Class 8 Priority Unsecured Claim of the Internal Revenue Service will be paid in full on the Effective Date of this Plan.

**4.9    Class 9 (UNSECURED CREDITORS)**

The Allowed Class 9 Unsecured Creditors shall receive monthly disbursements of the Debtor's Disposable Monthly Income, commencing the 5th day of the first month following the payment in full of all Class 9 Priority Claims Unsecured Claims, and continuing until the conclusion of the Plan Term or until each Allowed Class 9 General Unsecured Claim is paid an amount equal to 10% of each claim, whichever occurs later.  It is estimated that this will require the Debtor to pay a minimum combined total of $175,000.00.

All portions of allowed Class 9 claims that remain unpaid at the conclusion of all required payments to Class 9 under this Plan shall be forever discharged and rendered non-collectable against

the Debtor.

**4.10    Class 10 (THE DEBTOR)**

All estate property not sold or liquidated pursuant to this Plan shall revest in the Debtor on the Effective Date of this Plan.

**5.    TREATMENT OF UNCLASSIFIED CLAIMS AND INTERESTS; DISPUTED CLAIMS**

5.1    <u>Unclassified Claims</u>.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

5.2    <u>Administrative Expense Claims</u>.  Except as otherwise provided herein, all administrative expense claimholders allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Art. VII).

5.3    <u>Priority Tax Claims</u>.  Except as otherwise provided in Section IV, below, each holder of a priority tax claim will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

5.4    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

5.5    <u>Disputed Claim</u>. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.6    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.7    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

///

///

**6.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1      <u>Assumed Executory Contracts and Unexpired Leases</u>.

(a)      The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan:

| Other Parties to Lease or Contract | Description of Contract or Lease |
|---|---|
| DENT DOCTOR, INC. | COMMERCIAL BUILDING LEASE |

(b)      The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

**7.      MEANS OF IMPLEMENTING AND FUNDING THE PLAN**

**7.1      Funding The Plan**

The payments to Class 1, Class 7 and Class 9 creditors required under the Plan will be funded by the Debtor's Disposable Monthly Income.  Debtor shall make quarterly distributions to Class 1, Class 7 and Class 9 claims, in accordance with the terms of this Plan, during the entire Plan Term, and beyond to the extent required by this Plan.  These quarterly distributions shall be in an estimated amount of $8,000.00 per quarter, but may be more or less depending upon the profitability of Debtor's business.

Commencing on the Effective Date, Debtor shall first make quarterly prorata distributions of Debtor's Disposable Monthly Income to Allowed Class 1 Priority Claims, which shall continue on the fifth day of every third month thereafter until all Allowed Class 1 Priority Claims are paid in full without interest.  When the Allowed Class 1 Priority Unsecured Claims are fully satisfied, Debtor shall commence making quarterly payments to the Allowed Class 7 Claims until paid in full without interest.  Once the Allowed Class 7 Claims are paid in full, Debtor shall commence quarterly payments to Allowed Class 9 General Unsecured Claims, until the completion of the Plan Term, or until a each Allowed Class 9 General Unsecured Claims receive a combined total of ten (10%) of their total claim.  It is estimated that this will require the Debtor to pay a minimum combined total of $175,000.00 to

general unsecured creditors.  It is estimated that $223,000.00 will be necessary to fund the required Plan payments to Class 1, Class 7 and Class 9 creditors.  Based on the estimated quarterly distributions of $8,000.00, it will take the Debtor twenty-eight (28) quarterly payments to satisfy his obligations to Class 1, Class 7 and Class 9 creditors under this Plan.

Payments to Class 2, Class 4, Class 5, Class 7 and Class 8 shall be funded from Debtor rental income from the ongoing operation of his rental business, and from employment.

Any prorated payment to creditors whose claims are not liquidated or disputed shall be paid into a segregated trust account maintained at the Darby Law Practice until such claims are an allowed claim, in which event the proceeds shall be disbursed, or such claims shall be disallowed, in which case such sums shall be included in the next disbursement to creditors.

### 7.2    Revesting of Assets in the Debtor

Upon confirmation of the Plan, all property of the estate of the Debtor shall be revested in MICHAEL DECKER, pursuant to 11 U.S.C. § 1141(c), which shall retain such property as the Reorganized Debtor free and clear of all claims and interests of the creditors, except as set forth in the Plan.

### 7.3    Disbursing Agent

The Reorganized Debtor will serve as disbursing agent and shall disburse all property to be distributed under the Plan. The disbursing agent may employ or contract with other entities to assist in or to perform the distribution of the property and shall serve without bond.

### 7.4    Request for Application of 11 U.S.C. § 1129(b)

The Debtor, as Plan proponent, will request the Court to find that the provisions for dissenting classes provide for fair and equitable treatment of said creditors, and to confirm its Plan notwithstanding the requirements of § 1129(a)(8) as to such classes.

### 7.5    Post-Confirmation Litigation

The Debtor does not anticipate any post-confirmation litigation, except for collection matters or evictions that occur in the normal course of the Debtor's business, and the determination of certain claims. The Debtor reserves the right to prosecute any objections to claims.

///

### 7.6    Post-Confirmation Default

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel at the following addresses:

| | |
|---|---|
| Kevin A. Darby, Esq. | Michael P. Decker |
| 4777 Caughlin Parkway | 3645 Falcon Way |
| Reno, Nevada 89519 | Reno, NV 89509 |

The Debtor shall thereafter have fifteen (15) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors may bring the matter before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to bring the payment(s) current in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Code or dismissal if the same is in the best interests of creditors.

## 8.    FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Pursuant to the Plan, funding will be accomplished from the Debtor's income from which the Debtor intends to pay all taxes associated with its post-confirmation earnings.  Creditors are advised to discuss with their own tax advisor any tax effect to the creditor of such payments.

## 9.    INJUNCTION

From and after the Effective Date, and except as provided in the Plan and the Confirmation Order, all entities that have held, currently hold or may hold a Claim are permanently enjoined from taking any of the following actions on account of any such Claims: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, or their Property; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, or their respective property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Debtor or the Reorganized Debtor, or their respective property; or (v) commencing or continuing any action, in any manner or any place, that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

**10.    EXCULPATION**

From the Petition Date through the Effective Date, the Debtor and his agents and employees shall not have any liability to the Debtor or any other claimants or creditors, or other parties in interest in the Bankruptcy Case for any act or omission in connection with or arising out of the Bankruptcy Case, including, without limitation, prosecuting confirmation of the Plan, confirmation of the Plan, and the administration of the estate, the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct, and in all respects, such persons will be entitled to rely on the advice of counsel with respect to his duties and responsibilities with respect to the Chapter 11 Case and the Plan.

**11.    MISCELLANEOUS PROVISIONS**

(A)    Any creditor who failed to file a proof of claim on or before any Court imposed claims bar date, shall be barred from participating in any distribution under the Plan, and the Debtor shall have no further liability for such claim.

(B)    Following the Effective Date, the Debtor may continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor without further order of the Court.

(C)    The estate shall be deemed to be fully administered upon the commencing of distributions to the Class 1 creditor.

(D)    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

(E)    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

(G)    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

(H) Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**12.     RETENTION OF JURISDICTION**

The Bankruptcy Court shall retain jurisdiction for the following specific purposes:

(A)     For the purpose specified in § 1142 of the Bankruptcy Code;

(B)     The consideration of claims and such objections as may be filed to the claims of creditors pursuant to § 502 of the Bankruptcy Code, and to file and prosecute any counterclaims against such creditors;

(C)     The fixing of compensation for the parties entitled thereto;

(D)     To hear and determine the amount of all encumbrances or the recovery of any preferences, transfers, assets or damages to which the Debtor's estate may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law;

(E)     To reinstate the automatic stay pending a determination of the amount owed on any secured claim;

(F)     To hear and decide all causes of action now held by the Debtor, or disclosed in the Plan or Disclosure Statement;

(G)     To hear and decide all adversary proceedings or contested matters currently pending in the Bankruptcy Court, or which may be filed prior to or after plan confirmation;

(H)     To resolve any disputes regarding interpretation of the Plan;

(I)     To implement the provisions of the Plan, including all provisions in the Plan which specify the retention of jurisdiction, and to make such further orders as will aid in consummation of the Plan, including the sale of any property after Plan confirmation;

(J)     To adjudicate controversies regarding property of the Debtor's estate and regarding ownership thereof, including adjudication of causes of action which constitute property of the estate;

(K)     To modify this Plan in accordance with § 1127 of the Bankruptcy Code;

(L)     To enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; and

(M)    Enter a final decree and order closing the case.

**13.    MODIFICATION OF PLAN**

The Debtor may modify the Plan with regard to the treatment of any creditor class, in connection with any agreement or settlement with such creditor class or in order to comply with requirements of the Code as established by the Court, provided such modification does not materially adversely affect any other class of creditors. Such modifications may be reflected in the order confirming the Plan of Reorganization. Any other modification of the Plan shall be in accordance with § 1127 of the Code.

**14.    DISCHARGE**

Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments to unsecured creditors under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

DATED this 18th day of April, 2011.

DARBY LAW PRACTICE, LTD.
*/s/ Kevin A. Darby*
By:_____
KEVIN A. DARBY, ESQ. (#7670)
TRICIA M. DARBY, ESQ. (#7956)
DARBY LAW PRACTICE, LTD.
4777 Caughlin Parkway
Reno, Nevada  89519